# EXHIBIT B

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

Superior Court DOCV2013-000E
Department of the Trial Court
of the Commonwealth
Civil Action

NICHOLAS FIORILLO, AS
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST
    Plaintiff

v

KEVIN M. CURTIS, FELICIO
LANA d/b/a NORTHEAST PROPERTIES,
RICHARD MERLINO, MARK WINIKER,
TINA BRENN, DENNIS COY, STEVEN SHALANSKY,
CURTIS PROPERTIES, LLC, HOLLISTON
MASONRY, INC., METROWEST PROPERTY
MANAGEMENT, LLC, CANAL MARKETPLACE
DEVELOPMENT, LLC, BLACKSTONE LOFTS, LLC
TOR-SHAL CAPITAL, LLC, RIVER STREET REALTY
TRUST, THE 426 MAIN STREET REALTY, LLC, and
WEBSTER FIRST FEDERAL CREDIT UNION

*A True Copy Attest*

*Constable*

*5-14-14*

No.

Plaintiff (s)

Defendant (s)

# SUMMONS

\* To the above-named Defendant: Webster First Federal Credit Union
275 Greenwood St Worcester MA 01607

You are hereby summoned and required to serve upon Nathaniel Pitnof Esq .......................................................................................................................... plaintiff's attorney, whose address is 100 Granite St Worcester MA 01605 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the SUPERIOR COURT Department of the Trial Court at WORCESTER either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-claim any claim which you may have against the plaintiff which arises out of the transaction of occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Worcester, the.......................... day of .................................................................. in the year of our Lord two thousand and ........................ .

**Clerk**

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT — CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

\* NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior Court, Room 1008.

A True Copy Attest

Constable

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                            SUPERIOR COURT
                                         WOCV2013-02251D

NICHOLAS FIORILLO, AS
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST          **FIRST AMENDED**
     Plaintiff                       **VERIFIED CIVIL COMPLAINT**
                                     **FOR MONEY DAMAGES AND**
v                                    **EQUITABLE RELIEF**

KEVIN M. CURTIS, FELICIO
LANA d/b/a NORTHEAST PROPERTIES,
RICHARD MERLINO, MARK WINIKER,
TINA BRENN, DENNIS COY, STEVEN SHALANSKY,
CURTIS PROPERTIES, LLC, HOLLISTON
MASONRY, INC., METROWEST PROPERTY
MANAGEMENT, LLC, CANAL MARKETPLACE
DEVELOPMENT, LLC, BLACKSTONE LOFTS, LLC
TOR-SHAL CAPITAL, LLC, RIVER STREET REALTY
TRUST, THE 426 MAIN STREET REALTY, LLC, and
WEBSTER FIRST FEDERAL CREDIT UNION
     Defendants

Now comes the plaintiff and states:

1.   Nicholas Fiorillo ('Fiorillo') is the trustee of The Fiorillo
Family Revocable Trust and the 18 Penn Avenue Realty Trust, both with
a principal place of business at 49 Olde Colony Drive, Shrewsbury MA
01545.

2.   Kevin Curtis ('Curtis') is an individual who resides at 213
Mendon Street, Upton, MA 01568.

3.   Tina Brenn ('Brenn') is an individual who resides at 21 Highland
Street, Whitinsville, MA 01588.

4.   Dennis Coy ('Coy') is an individual who resides at 42 Brunnell
Drive, Holden. MA 01520.

5.    Pursuant to the partnership agreement I deeded properties to the partnership including 26 Central Avenue in Dudley, MA by instructing Frank Fiorillo, the trustee, based on my authority as the trustee of Fiorillo Family Revocable Trust, to execute the deed recorded in the Worcester Registry of Deeds in Book 47528 Page 15. (attached as #1).

6.    With respect to 426 Main Street Realty Trust, I executed the mortgage recorded in Worcester Registry of Deeds Book 44933 Page 354, (attached as #2).  I also appear in the Secretary of State's records as the resident agent for the Trust, (attached as #3).  The scheme to devolve me of my ownership is more particularly set out in the verified complaint filed with the Court.

7.    I ratify all of the schemes I have alleged were committed by Curtis and all of the defendants to deprive me of my interest in the real estate as set forth in my verified complaint.

8.    In the contract between us, Kevin Curtis agreed to form Metrowest Development Companies, LLC.  That name was not available so Metrowest Property Management LLC was formed by Attorney Gary Hogan on Curtis' behalf. It purchased 114-116 River Street, Southbridge, 23 Hamilton Street, Southbridge, 3 East Main Street, Webster and 26 Central Avenue and 9 Cross Street, Dudley, MA (attached as #4).

9.    With respect to the Blackstone Lofts project, I had entered into a partnership with Peter Picknelly who was to develop a gaming casino in Worcester on the locus of 90 Harding Street, 85 Harding Street and 85 Winter Street, (attached as #5).  Those properties were referred to in a similar agreement by Curtis with Virgin Properties in which at paragraph 4g, Curtis is selling his 50% ownership. (attached as #6) I am the owner of the other 50%.  I am the holder of the winning bid at a foreclosure auction on 90 Harding Street, and I assigned it to Canal Marketplace Development, of which I am a 50% owner. (attached as #7)

10.   With the money Curtis cheated me out of, as more fully described in the verified complaint, he invested some or all of it with corporate entities of which he had controlling interest.  He did so because some or all of those entities were in financial difficulty and the money he diverted from me helped prop up the financial instability of those entities, namely Northeast Properties, Curtis Properties LLC, Holliston Masonry, Inc., Metrowest Property Management LLC, Canal Marketplace Development LLC, Blackstone Lofts, LLC, River Street Realty Trust a/k/a Riverview Realty Trust, and The 426 Main Street Realty, LLC.

11.  With respect to Felicio Lana, Curtis made him the building
manager of 426 Main Street-7 Pleasant Street, Worcester and all of
the other partnership properties.  Lana has been publishing that he
is the owner of 426 Main Street because he has taken over the full
control of the building by collecting all rents and changing the
locks.  In the verified complaint, it is stated that he has not used
the rents for the purpose of the building but has stolen the rents
that otherwise would have been used to (1) maintain the building (2)
pay taxes (n.b. the City of Worcester had taken tax title to the
property and it is shortly going to be forever lost because the right
of redemption is to expire within the next several weeks. He has also
taken funds from all of the properties in the portfolio.

12.  The money that was converted by Lana has been put into his other
entities, which companies and assets are necessary for me to have
available to satisfy a judgment against him through his companies.

_____
Nicholas Fiorillo

5.    Steven Shalansky ('Shalansky') is an individual who resides at
22 Wingate Road, Providence, RI 02906.

6.    Shalansky transacts business throughout Massachusetts, including
the financing of real estate in Worcester MA through the defendant
Tor-Shal Capital, LLC, which is registered as a business entity with
the Secretary of State of the Commonwealth.

7.    Having purposefully established more than the minimal necessary
business contacts with Massachusetts, Shalansky is subject to the
long-arm jurisdiction of the Worcester Superior Court pursuant to
General Laws Chapter 223A § 3.

8.    The defendants Curtis Properties, LLC, Holliston Masonry, Inc.,
Metrowest Property Management, LLC, Canal Marketplace Development LLC,
Blackstone Lofts LLC, Riverview Realty Trust and The 426 Main Street
Realty LLC are all now or have been controlled by the defendant
Curtis as their manager, signatory authority and person with
authority to execute documents purporting to affect an interest in
real property as shown on the records of the Secretary of State of
the Commonwealth.

9.    Webster First Federal Credit Union is a federally charted credit
union with its operations center at 271 Greenwood Street, Worcester,
MA 01607.

10.   The defendant Felicio Lana is an individual doing business as
Northeast Properties, 48 Williams Street, Worcester MA 01609.

11.   The defendant Richard Merlino is an individual who is doing
business at 161 Providence Road, Whitinsville, MA 01588.

12.   The defendant Mark Winiker is an individual who resides at 760
Prentice Street, Holliston MA 01746.

## NATURE OF THE CASE

Plaintiffs allege that the RICO Defendants have conspired to embezzle, extort, convert, and launder money and property and monthly property rents from the trusts of which Fiorillo is the trustee, the Fiorillo Family Revocable Trust and 18 Penn Ave Realty Trust through conversion of monthly property rents, of refinancing proceeds, of insurance proceeds, by intentional mismanagement of investment properties, by self-serving lavish spending, overbilling for inferior work or work not performed at all, and substandard and unworkmanlike repairs and maintenance of the properties. The RICO defendants have used their real estate business dealings with Fiorillo and the trusts and the following real estate and rental incomes to carry out this Scheme: 426 Main Street, 78 Waverly Street, 18 Penn Avenue, 757 Main Street, 90 Harding Street, 85 Winter Street, 70 Harding Street, 27 Chandler Street, 2 North Main, 3 East Main Street, 3 Negus Street, 7-12 Cross and Central Street, 15-23 Hamilton Street, 144-116 River Street, 110 Pine Street, all of which are in Worcester County -- Shrewsbury, Worcester, Webster, Dudley and Southbridge.

(The Scheme includes a number of interrelated "sub-schemes" at various properties as described below.

## THE CURTIS-FIORILLO PARTNERSHIP SCHEME

13.   In or about January 2011 Fiorillo and Curtis entered into a partnership agreement involving investments in real estate and property management. Curtis agreed to pay Fiorillo $150,000 for a 50% equitable interest in certain real property, contracts for deed and purchase agreements the Plaintiffs already had ownership in and both partners agreed to be paid $75,000 in annual salary from the revenue generated by the partnership.

14.   Fiorillo was to search for, find, and negotiate the purchase of new real estate and development projects and often-times arrange financing for the benefit of the partnership.  He was also to assist in the rental and lease-up of the properties and Curtis was to manage the properties, such duties including but not limited to collecting rents, hiring and firing employees and subcontractors, timely payment of operating expenses and maintenance and renovation the properties.

15. Fiorillo uniformly upheld his obligation to the partnership. Most of the corporate defendants are entities that were formed in order to purchase yet more property that continued to have the potential for millions of dollars in profit that Fiorillo had discovered, cultivated, litigated, arranged financing for and negotiated. Curtis did not uphold his obligations.

16. This partnership was formed to meld Curtis' construction and building maintenance expertise with Fiorillo's then-ownership of certain real estate properties and purchase contracts in Worcester County and his expertise in seeking out additional income-producing properties coupled with his contacts and business relationships with various lenders who would be available to finance the future projects of the partnership.

17. From the inception of the partnership Curtis diligently worked to line his own pockets and to usurp partnership assets, convert refinancing and insurance proceeds and outright neglect his duties to maintain, repair, manage and construct in a good and workmanlike manner the real estate assets of the partnership.

18. All of the individual defendants and the various LLC defendants which were formed to purchase, build out and develop and maintain various partnership projects of Fiorillo and Curtis have continuously, even to this date, conspired to defeat Fiorillo's claim to the property and property rights and rents of which he is legally entitled.

19. During this time, Curtis instructed, controlled and employed all of the defendants in order to defeat Fiorillo's legal and equitable ownership in all of the properties named in the lawsuit, and all of this was done with illegal purpose to impede, defeat, convert and cash out from all of the properties so as to prevent Fiorillo from obtaining what he was legally entitled to.

20. Brenn knew that Curtis' financial transactions for the projects were self-promoting, self-serving, fraudulent and illegal and she cooperated with and assisted him in his fraudulent conversion of partnership assets and funds to his sole benefit.

21.   Shortly after the founding of the partnership, Curtis informed Fiorillo that the payment of $30,000 he made towards the $150,000 buy-in is all the money he had and he never paid the balance of the agreed-upon amount.   Relying on the representations made by Curtis, Fiorillo had by that time transferred all of the real estate that he had agreed to into the partnership.   Curtis' failure to pay his buy-in was intentional and his actions constitute fraud, as he was always aware he did not have the funds to pay Fiorillo for his partnership share.

22.   Curtis made promises to Fiorillo of payment of the balance of the buy-in from his own company, Holliston Masonry.

23.   Curtis made some further payments towards his buy-in, but then he admitted he had sustained significant losses in his failing masonry business and from losses in a $250,000 investment made in a money laundering scheme originating in the sovereign state of Ghana.

24.   In the meanwhile Curtis was neglecting his partnership duties yet taking partnership money for the work he was doing for the partnership, although he was often working in his masonry business, his separate real estate investments in Florida and taking trips to Africa to resolve his losses in Ghana.   While he failed to attend to the partnership business, he had hired incompetent and collusive workers who were incapable of carrying on the partnership business in his absence.   This failure to monitor the partnership business and this negligent entrustment of partnership duties and obligations cost the partnership hundreds of thousands of dollars in lost income because it causally contributed to mismanagement of the rental property and failure to complete renovations, all of which meant the loss of tenants and rents over substantial periods of time.

## THE EAST AND NORTH MAIN, CENTRAL, CROSS, NEGUS, RIVER PINE AND HAMILTON STREET BANK AND INSURANCE FRAUD SCHEME

25.   Fiorillo had owned, possessed and/or negotiated the purchase contracts on distressed bank-owned assets of approximately 55 units of multi-family housing and retail units at well below market value. These assets had a collective stabilized retail value of $1,650,000 and equity, after repositioning, in excess of $1,000,000 on properties in Webster, Dudley and Southbridge. Fiorillo had negotiated the purchases and arranged for the acquisition and construction financing and had transferred all to the partnership.

26.  Then, now and ongoing, Curtis' duty was to cost-effectively manage, renovate, stabilize and improve the current tenant base of these properties in a timely fashion. Curtis immediately began to collect all the rents that were in place, yet he defaulted on the monthly mortgage payments, the real estate taxes, and the water and sewer and common electrical expenses.
Over two years he attempted but failed to complete renovations to these units.  The rental income was approximately $55,000 a month and he converted this money and continues to convert this money to his own use and only sporadically makes payments for their debt service and real estate taxes.  As a result, most if not all of these properties are in tax-title receiverships.

27.  Then, now and ongoing, Curtis and all the other defendants committed numerous acts of bank and mail fraud by representing to conventional and private banks with whom all of the defendants were conspiring to refinance and borrow to defeat Fiorillo's interest in all the properties involved, that Curtis was the sole owner of the partnerships assets which has never been true and was known to be such by all the defendants. Curtis, using the US Mail system and internet commerce, conspired with the other defendants in applying for and receiving new loans from various banks and lenders by providing fraudulent personal/business financial statements, tax returns and ownership documents that the defendants knew to be false.

28.  Curtis with the knowing help of Lana, Winiker, Brenn, Coy, Shalansky, Tor-Sham, and Webster First, conspired to refinance these properties and cash out approximately $600,000 of the equity of which Fiorillo was entitled to one-half.

29.  Curtis has fraudulently represented to Fiorillo that the monies were used-up by losses caused by construction cost overruns, payroll, non-paying tenants, reimbursements due to him, his employees, including his girlfriend, Brenn the book keeper, Coy the financier and bogus loans he had allegedly made to help the construction along the way.

30.  Curtis, over a matter of years, also claimed some of the these properties sustained damage from fire, flood, break-ins and natural disasters, for which he filed claims with insurance carriers who paid in excess of $175,000 for the losses.  Curtis converted these payments to his own use. In one alleged loss on North Main Street in Webster, a flood of a third-floor kitchen sink caused damages in

excess of $135,000.  From the insurance proceeds of $83,000 to date, Curtis boasts about repairs costing only $12,000.  Under the mortgage on the property, Curtis had an obligation to apply any overages after repairs to the outstanding mortgage balances that encumber the properties; however, he forged the mortgagor endorsements, cashed the checks, and converted the overages to his enterprise.

## THE 426 MAIN STREET SCHEME

31.  Fiorillo had earlier owned and managed a 14,000 square foot mixed-use office building strategically located in downtown Worcester with a "Honeydew Donut Shop" as the national anchor tenant with approximately $7,500-$9,500 in monthly income. The continued fall out of the real estate crash of 2008-2009 had caused the tenant base to decreases and Fiorillo had some difficulty with the property but he was able to re-structure a loan package with the first and second mortgages and simultaneously take Curtis in as a 50% equitable partner.

32.  As the economy improved, Fiorillo was able to lease approximately 70% of the building but was hindered by Curtis and his inferior renovations and poor management of the existing tenant base yet Fiorillo was still able to increase the monthly rents to $10,800. Because of Curtis' failure to uphold his obligations, tenants have withheld rent, moved out and made health code and fire code complaints to the City of Worcester for failure to properly maintain the building to Code standards. Most recently, for at least the last five months, the elevator in the five-story building has been broken down, has not had a valid elevator inspection sticker and requires at least $10,000 for deferred maintenance, has at least $3700 in unpaid monthly service fees and has been condemned by the state elevator inspector.

33.  Curtis for approximately the last 13 months has failed to make mortgage payments, real estate tax and water and sewer payments and has amassed some $80,000 in unpaid bills. He also caused the property to be taken by tax title all the while Curtis has collected the rents and has not paid these bills and has converted at least $185,000 in rents since 2011.

34.   Most recently, Curtis is attempting to strip Fiorillo's 50% ownership in this building by conspiring with Winiker and Lana in claiming he is unable to properly manage the building and wants to execute a deed in lieu of foreclosure.  Their intention is to cause Fiorillo to lose his 50% equitable in the property.

35.   To carry out this scheme, Curtis and Winker and Lana hired a third party management company, Northeast Properties, with its principal Felicio Lana as the manager. Lana, in addition to having at one time outstanding debts consisting of $500,000 in back taxes and fines to the City of Worcester owes millions of dollars to national lenders, and he has defaulted on more than $1,800,000 in loans secured by his personal guaranty.  He also has two pending bankruptcies and is conspiring with Curtis and Winiker to devolve Fiorillo of his interest in the property by claiming the property is owned by him and he continues to collect rent and not service the debt or the expenses of the property.

### 757 MAIN STREET SCHEME

36.   Fiorillo negotiated a purchase contract and arranged the acquisition and construction financing for a $160,000 dollar existing single family home in Shrewsbury for the benefit of the partnership. Curtis would, with the design and renovation ideas of Fiorillo, oversee the renovations and manage the construction funds so the partnership could quickly fix the house and sell it for a profit. When complete, the home would be marketed for $450,000 dollars and with the initial construction and finance costs of $100,000, there would have been a $190,000 gross potential.

37.   Curtis failed in his duties.  He failed to substantially complete the project.  He left the uncompleted home open to the elements for at least a year, allowed the building permit to lapse, did not pay subcontractors, defaulted numerous times on the debt service payments, accrued costs for the stalled project, and by his mismanagement caused the property to go into tax title and the private lender now intends to foreclose.

38.   Curtis diverted the construction funds to other projects unrelated to the partnership, thus causing tens of thousands of dollars and interest and late fees to accrue. Further, he has fraudulently inflated his alleged costs on the property in order to benefit his claim for reimbursement.  His action has also caused the property to be encumbered by a second mortgage from a private lender.

## 78 WAVERLY AND 18 PENN AVENUE SCHEME

39.   In 2008 Fiorillo effected a complex realty purchase from an estate, comprising an 8-unit mixed use multi-family and 2-family property on the corner of Grafton and Waverly Streets in Worcester. He also arranged a private loan for the trust and paid $312,000 for the two properties.  He immediately began to make improvements. In the fall of 2009, Fiorillo applied to Webster First for a new loan to pay off the private loan. The bank appraised the properties for $725,000 and gave the Trust a loan for $360,000.

40.   Fiorillo continued to manage the property for benefit of the Trust for a matter of years but in 2011 found himself devoting his full time to efforts to make the partnership a success.

41.   The City of Worcester, based on a tenant complaint generated by an eviction proceeding, ordered him in 2011 to fix 78 Waverly Street's deferred maintenance, heath code and lead abatement issues.

42.   Due to Curtis' failure to pay his $150,000 obligation to Fiorillo and to effectively manage the partnership assets to generate the $75,000 salary agreed upon, Fiorillo faced financial difficulty. In spite of Curtis' fraudulent, continuing assurances that monies would soon be forthcoming, monies in an amount substantially less than was due were paid to him.

43.   At the same time, Curtis was diverting partnership assets and resources to the maintenance, employee expenses, and contractors all performing work related to non-partnership properties, including Holliston Masonry and other non-partnership buildings.  Curtis also promised and assured Fiorillo that he would make improvements equal to or more than the cost of the work and effort he had diverted into his projects.

44.   Curtis continued to promise Fiorillo that he would immediately attend to and remediate the lead problems at 78 Waverly Street.  To that end, Curtis communicated with the Worcester Board of Health, executed contracts to begin the work, and at partnerships expense had himself and other employees enter into a program leading to a certification that he was a certified de-leader qualified to remediate lead paint violations.

45.   Nevertheless, Curtis never took any action to de-lead the property once he was certified and thus legally able to provide these services.

46.   Fiorillo, relying on Curtis' fraudulent and false assurances, continued to negotiate with the City and the Housing Court for more time to complete repairs and remediation.  However, in 2012 the Housing Court would not give any further work extensions:  it levied a $15,000 fine with a threat of contempt and jail if the fine were not paid.

47.   Seeking to capitalize on Fiorillo's problems - brought on in very large part by his own self-dealing and false promises - Curtis schemed to have Fiorillo give him an ownership position in the property, upon which action Curtis promised to start the improvements and remediation work that he had been promising for a number of years.

48. Threatened by the City with a receivership action in February 2013, Fiorillo deeded the properties to Curtis for consideration of $1.00, relying on Curtis's promise to finally rectify the outstanding issues and the agreement to invest partnership monies and resources to remediate the lead and other health problems.

49.   Curtis took the deed from the Trust into Curtis Properties, then claiming 100% ownership of the realty but the agreement had been a 50-50 ownership based on Curtis' promise to finally fix all of the problems with the realty that he had promised but had never lived up to, but left Fiorillo as obligor on the mortgage.

50.   Over a matter of months Curtis collected $38,000 in rents, converting them to his own use, and did next-to-nothing on his promise to work on and fix the problems with the property.

51.   Curtis remained in constant contact with Webster First Federal's James Vasil, the vice-president of commercial lending.  In spite of his failing to make any mortgage payments, Curtis applied for a new loan to refinance the property and cash out the equity.

52.   Webster First, Curtis, Brenn and Coy came up together with a plan to foreclose on the properties, to legally strip Fiorillo of any claim of ownership and thus leaving Curtis will full ownership, all the while leaving Fiorillo with exposure on his personal guaranty on behalf of the Trust.

53.   Fiorillo, recognizing that this conspiracy would result in all of the Trust assets, of which his children were the beneficiaries, being lost, notified Curtis that he was reporting him to the Office of the Attorney General for Curtis and his group's fraudulent and larcenous actions involving the scheme of the deeding of the Waverly Street Properties.  In order to dissuade Fiorillo from his legal right in making such a complaint to a law enforcement agency, Curtis threatened to make false accusations to the I.R.S. that Fiorillo had committed tax evasion, a criminal offense.

54.   Curtis thereupon convinced the Credit Union and the City that Curtis Properties was just a shill for the Trust and Fiorillo remained the true owner.  The Credit Union, through Vasil, having failed to carry out any due diligence about the financial condition of the property during the time Curtis collected rents and did not pay the mortgage, foreclosed on the property and an auction date was set. The City filed a multi-count receivership action against the Trust and Fiorillo as trustee.

55.   At the auction, Curtis, with Vasil at his side, registered as a bidder and made the second bid of $235,000, some $150,000 less than the obligation to the Credit Union, which included late fees and back mortgage payments accrued during Curtis' control of the property.

56.   The value of the property having been publicly recognized, a bidding war then ensued at the auction.  The winning bid was $389,000, $60,000 more than what was owed before Curtis took control of the equity but noticeably $225,000 less than the fair market value of the property had Curtis properly managed, maintained and repaired the property as he had fraudulently promised to do.

## CANAL MARKEPTPLACE DEVELOPMENT SCHEME

57.   In spring 2012 Fiorillo was the winning bidder in a commercial real estate auction for a 35,000 square foot restaurant and function facility attached to the former Saint John's High School with 3.5 plus acres of land and an adjacent 200-plus space parking lot in Worcester's up-and-coming Canal District.

58.   Fiorillo assigned 50% of his rights to the winning bid to Curtis and Winiker in exchange for Winiker investing the equity needed to purchase the property.   This was a very valuable property, which was even later considered for the Commonwealth's lone slots casino. Fiorillo had arranged for a $1,050,000 commercial loan on behalf of this new partnership and cultivated this valuable acquisition that was integral to help secure the overall $45,000,000 redevelopment plans of the Blackstone Lofts and Canal Marketplace project that had been envisioned by Fiorillo for the partnership. In a recent development, Winiker is now claiming 99% ownership and Curtis as a 1% owner.

59.   In the late winter of 2012, Curtis had filed yet another insurance claim, collected $50,000 dollars and stated he was using these funds to re-invest in this new partnership, but in fact he only used a minimal amount of these funds, and he converted the balance to his own use.

60.   Fiorillo continued to devote his effort and bring value to the partnership and was able to enter into a "Letter of Intent" with Peter Picknelly and a potential gaming partner, Penn Gaming, to develop the site into a $500 million destination slots hotel casino. This letter of intent had the potential for a multi-million dollar return to the partnership.

61.   Curtis and Winiker, realizing the value in the property and the many differing development options along with the adjacent site owned by the partnership, worked a scheme to usurp this opportunity by trying to capture the future tremendous upside value of the property for their own benefit by changing the ownership agreement based on the threat to not fund the project and thus Fiorillo would lose the deposit and his winning position.

62.   Curtis and Winiker, unilaterally and without notice to Fiorillo, secretly paid off the first mortgage of $1,050,000 and at the same time they took an assignment of the mortgage position, thus obtaining the opportunity to charge Canal Market Place upwards of an 18% loan rate and the ability to immediately foreclose and collapse the mortgage so as to strip Fiorillo of any ownership right.   In addition, Curtis and Winiker are attempting to re-finance and cash out the equity so as to defeat Fiorillo's rightful ownership.

### BLACKSTONE LOFTS SCHEME

63.  Fiorillo, seeing the value in the up-and-coming Canal District in Worcester, envisioned a multi-million dollar loft-apartment, retail, restaurant and entertainment project in an adjacent 135,000 square foot partially converted mill building across from the Canal Market Place property that had fallen on hard financial times during the real estate crash of 2008.

64.  Through his extensive efforts, Fiorillo, with the help of the mortgagee in possession, was able to make a complex purchases and assemblage of this property. He also was integral in arranging financing of at least $2,000,000 in interest-free loans for upwards of two and a half years.

65.  At this point, Fiorillo questioned Curtis' abilities and bona fides as a partner due to Curtis' continual excuses, failure to perform in other real estate deals, and his taking advantage of Fiorillo's devotion to the partnership, and so Fiorillo began to explore financial relationships with other potential, partners and investors.

66.  Fiorillo, in order to make the deal work, pushed on for the good of the deal without Curtis and completed the complicated restructuring in the early spring of 2013. However, Fiorillo the project needed $100,000 to finalize the deal and close on the new loan package.

67.  Curtis, seeing the deal as immensely profitable, wanted to participate by promising to raise the $100,000 from an available source, a family friend of his. At the last minute he informed Fiorillo that he was unable to raise the money; he thereupon suggested pledging the partnerships assets of the Cross and Central and Hamilton Street properties in Dudley and Southbridge to a hard-money lender for $100,000.

68.  Although Fiorillo had not even been paid in full for his original partnership deal and was owed at least $200,000 between back pay and sale proceeds, had no other choice but to accede to this solution to save this immensely profitable Blackstone deal.

69.   Curtis demanded a 50% interest in the Blackstone deal for the pledging of the property (of which Fiorillo was already a 50% owner under the original partnership).

70.   As envisioned by Fiorillo, the project would have the potential of $1,550,000 gross income, fully stabilized, with the development of 100 new construction apartment/condos and 30,000 square feet of retail, office and restaurant space worth upwards of $20,000,000 in total.

71.   Soon after the closing, Curtis and the other named defendants began to collect at least $8000 a month in rent.  They also began to default on the project's obligations by not paying the legal fees needed to move the project forward, haphazardly pay the taxes, insurance, water and sewer and allowed units to fall into tax title.

72.   Curtis has sat on his hands doing nothing to move the project forward, has not reinvested the cash flow properly and even has defaulted from time to time on the $100,000 loan that now encumbers Fiorillo's original properties in the original partnership; as a result a portion of the property was foreclosed on and sold at auction in April 2014 resulting in a $400,000 +/- deficiency which is now levied against a Blackstone Lofts asset, condo unit 4B, which adversely affects Fiorillo's ownership interest in that unit and hinders control of the condo association.

73.   Curtis purposefully let the project languish, drained every penny as he saw fit and now Fiorillo is in fear that Curtis has used the guise that he has 'given up', while all the time has been conspiring with the previously-failed developer Salim Lahoud, Winiker and Lana to strip Fiorillo of his rightful ownership.

### COUNT I – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) VIOLATION, (18 U.S.C. § 1961 et seq.)

74.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

75.  Pursuant to the requirements set forth in *Springfield Housing Authority v Burgos,* 32 Mass. App. Ct. 673 (1992), Fiorillo states that Curtis, both individually and through his control at all pertinent times, of the defendants Curtis, Merlino, Winiker, Lana, Brenn, Coy, Shalansky, Lana, Curtis Properties, Holliston Masonry, Tol-sham LLC and Webster First combined to form an "enterprise" as that term is defined at 18 U.S.C. §1961(4) ("the Curtis Enterprise"). Each of the defendants were members and associates of the Curtis Enterprise that were engaged in fraudulent real estate and insurance transactions, and the procurement of fraudulent financing for such transactions through mail fraud, bank fraud, insurance fraud money laundering and extortion. The Curtis Enterprise positioned itself to legitimate banking and insurance institutions to enrich its individual members. At all pertinent times the Curtis Enterprise was an organized crime group that operated in central Massachusetts and at all pertinent times, it constituted a continuing unit for the common purpose of achieving the enterprise's objectives.

76.  At all pertinent times the Curtis Enterprise was engaged in interstate commerce.

77.  The Curtis Enterprise is a group of individuals and corporations associated in fact, although it is not a legal entity. The means and methods utilized to conduct its organized crime activity included a pattern of extortion, bank fraud, insurance fraud, conversion, intimidation, economic duress and money laundering through carrying out fraudulent refinancing which had the effect of converting monies and property not owned by the defendants. The unlawful actions of the defendants occurred on a continuing basis from at least the beginning of 2011 to the present. The defendants have conspired to defraud and extract large sums of money and property from the plaintiffs by engaging in the pattern of activity that consists of numerous crimes as set forth below.

78.  The purpose of the enterprise was as follows:

    a. to enrich its members;
    b. to preserve, protect, and augment its financial and real
       estate holdings in central Massachusetts.

79.   Among the means and methods employed by the members and
associates of the Curtis Enterprise in the conduct of the
enterprise were the following:
a.   members and associates conspired and committed mail and wire
fraud, bank fraud and insurance fraud and money laundering
through refinancing and managing  properties with numerous
lending institutions and companies involved in real estate
and insurance transactions;
b.  members and associates engaged in fraudulent acts to enrich
its members;

80.   The individual members of the Curtis Enterprise would cause the
corporate members to apply for loans and obtain insurance policies
with various lenders and carriers and make false representations
about the ownership of these assets. They would consistently state
verbally and on mortgage and insurance application that Curtis was
the 100% owner of these assets and he had no other partners.   The
defendants would then obtain insurance policies and loan
commitments for refinances and would then: (1) take new loans with
various lenders and refinance these properties for much more than
what was previously owed and "cash out" hundreds of thousands of
dollars that was not rightfully the defendants; (2) to insure and
bind properties for inflated coverage amounts to only then collect
on losses that clearly where suspect; (3) to alter or forge the
insurance checks that where received to prevent the outstanding
mortgage debts to be paid down with the excess funds after repairs
or convert the funds directly to defendant Curtis.   (4) to execute
and deliver false loan documents and financial statements for the
purpose of inducing the various lenders to provide new extensions
of credit under false pretenses.

81. Finally, in at least seven separate instances, defendants Curtis,
Lana, Winiker, Coy and Shalansky and the other defendants placed
loans on properties, converted insurance proceeds and caused
advances of funds not rightfully theirs in excess of $750,000 to
Curtis who e then diverted the money to his own use. The
defendants' apparent intent throughout the history of said loans
and insurance schemes where to profit unlawfully from said
transactions by purposefully "cashing out" upwards of three
quarters of a million dollars that was rightfully Fiorillo's.

82. Defendants jointly and severally have conducted the affairs of said Curtis Enterprise through the aforesaid pattern of racketeering activity. Specific racketeering acts undertaken included but were not limited to:

a.   **Mail and Wire Fraud To Obtain $600,000.00 at Loan Closings on the following Properties:** 2 North Main, 3 East Main Street,3 Negus Street, 7-12 Cross and Central Street,15-23 Hamilton Street, 114-116 River Street, 110 Pine Street. In or around February 2011 and continuing to this day, one or more of the defendants, including defendants Curtis, Brenn, Coy, Shalansky  and the other defendants, having devised a scheme or artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing, attempting to execute, and aiding and abetting the execution of, placed and caused to be placed in post offices and authorized depositories for mail matter, matter and things to be sent by the United States Postal Service or by private or commercial interstate carrier, and took and received therefrom, such matter and things and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial interstate carrier according to the directions thereon such matter and things, to wit: loan closing documents, including the HUD-1 Settlement Statement from the refinance and loan closings of the above named properties, in violation of 18 U.S.C. §1341;

b.   **Extortion to Obtain 78 Waverly Street and 18 Penn from the Plaintiffs**

In or about February, 2013 one or more of the defendants, including defendants Curtis, aided and abetted and obtained property from the 18 Penn Ave Realty Trust, to wit, a deed for $1.00, with their consent, induced by wrongful use of actual or threatened force, violence, or fear including fear of economic loss, and by such acts attempted to obtain property to which they were not lawfully entitled all in violation of 18 U.S.C. §1951 and M.G.L. c. 275 §25; specifically, Curtis and Lana threatened to publish to the Worcester business community that Fiorillo was a drug dealer and a drug smuggler if Fiorillo went ahead with his lawsuit against them.

In or around September 2012 and up and until at least Curtis and the other named defendants conspired having devised a scheme or artifice to defraud and to obtain money or property by means of false and

fraudulent pretenses, representations and promises concerning
material facts and matters, for the purpose of executing, attempting
to execute, and aiding and abetting the execution of, placed and
caused to be

**c.    Bank Fraud to Obtain $600,000 at the Closings of the following
properties:** 757 Main Street,2 North Main, 3 East Main Street,3 Negus
Street, 7-12 Cross and Central Street,15-23 Hamilton Street, 144-116
River Street, 110 Pine Street:

In or about January 2011, and continuing up and until this day, one
or more of the defendants, including defendants Curtis and Brenn and
Coy, executed, attempted to execute, and aided and abetted the
execution of a scheme and artifice to obtain monies, funds, credits,
assets, securities and other property owned by, or under the custody
and control of a financial institution by means of false and
fraudulent pretenses, representations and promises in that they
fraudulently obtained monies amassing to over $600,000, payable to
defendant Curtis, from the refinance proceeds from the above named
properties, in violation of 18 U.S.C. §1344;

**d.    Insurance Fraud to Obtain $150,000 from suspect claims at the
following properties:** 2 North Main, 3 East Main Street, 3 Negus
Street, 144-116 River Street, 110 Pine Street, 90 Harding Street:

In or about December 2011, and continuing up and until this day, one
or more of the defendants, including defendants Curtis and Brenn and
Shalansky, executed, attempted to execute, and aided and abetted the
execution of a scheme and artifice to obtain monies, funds, credits,
assets, securities and other property owned by, or under the custody
and control of an insurance institution by means of false and
fraudulent pretenses, representations and promises in that they
fraudulently obtained monies amassing to over $150,000, payable to
defendant Curtis, from the insurance proceeds from the above named
properties by way of forging various checks and converting funds away
from the Plaintiffs, in violation of 18 U.S.C. §1344;

**e.    Money Laundering in Connection with the Insurance Proceeds from:**
2 North Main, 3 East Main Street,3 Negus Street, 114-116 River Street,
110 Pine Street,90 Harding Street

In or around September 2011 and up and until this day, one or more of
the defendants, including defendants Curtis, Brenn and Shalansky,
knowingly engaged in, attempted to engage in, and aided and abetted
the engaging in and attempted engaging in a monetary transaction in

criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, to wit: the depositing of in excess of at least one $83,000 insurance check on which defendant Curtis forged the endorsements to obtain the proceeds that was obtained through fraud and numerous other insurance checks where the endorsements where forged, in violation of 18 U.S.C. §1957;

f.   **Obstruction of Justice in Connection with this Instant Case**

At various times between June 2013 and up and until date of this Complaint, including, but not limited to in or around September 10th 2013, one or more of the defendants, including defendants Curtis did knowingly use intimidation, threaten, and corruptly persuade and did attempt to knowingly use intimidation, threaten, and corruptly persuade plaintiff Fiorillo with the intent to influence, delay and prevent his testimony in an official proceeding, and did aid and abet the same, and did cause and attempt to cause plaintiff Fiorillo to withhold his testimony in an official proceeding, to wit: the Fiorillo instant state lawsuit against the defendants and others, all in violation of 18 U.S.C. §1512(b).

83.   The individual defendants each, jointly and severally have re-invested the proceeds of their racketeering enterprise into said Curtis Properties, Holliston Masonry, Tol-Sham LLC and the Curtis Enterprise as well as various holding companies in the Commonwealth of Massachusetts.

84.   Said pattern of racketeering activity caused great damage to the plaintiffs, including, but not limited to, losses in excess of approximately $10 million.

85.   Moreover, it appears that such activity is persistent and ongoing. The intervention of the Honorable Court is necessary to deter future racketeering activity.

   **COUNT II: CIVIL RICO CONSPIRACY (18 U.S.C. §§1962(d),1964(c))**

86.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

87.   The members of the Curtis Enterprise, as above defined, did unlawfully agree and conspire together to perform the illegal acts set forth above in violation of 18 U.S.C. §1962(d).

88.   Their conduct constituted an ongoing criminal conspiracy.

89.   Said RICO conspiracy caused great damage to the plaintiff, including, but not limited to losses in excess of approximately $10 million.

**COUNT III: BREACH OF CONTRACT v. FIORILLO-CURTIS PARTNERSHIP**

90.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

91.   The defendant and Fiorillo entered into binding contracts which contract included an implied obligation of good faith and fair dealing.

92.   By its conduct set forth above, the defendant breached said contract without excuse or right.

93.   Said breach of contract caused great damage to the plaintiffs, including, but not limited to economic losses.

**COUNT IV: BREACH OF CONTRACT v.**
**BANK & INSURAUNCE FRAUD SCHEME**
**The East and North Main, Central, Cross, Negus, River Pine and Hamilton Street**

94.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

95.   The defendant and the plaintiffs entered into a binding contract which contract included an implied obligation of good faith and fair dealing.

96.   By its conduct set forth above, the defendant breached said contract without excuse or right.

97.   Said breach of contract caused great damage to the plaintiffs, including, but not limited to economic losses.

**COUNT V: BREACH OF CONTRACT v. CURTIS, CURTIS PROPERTIES, LLC, THE
426 MAIN STREET LLC: 426 MAIN STREET SCHEME**

98.   The plaintiffs repeat and reiterate each and every allegation
set forth above and incorporate such allegations into this count.

99.   The defendant and plaintiffs entered into a binding contract,
which contract included an implied obligation of good faith and fair
dealing.

100.   By its conduct set forth above, the defendant breached said
contract without excuse or right.   Said breach of contract caused
great damage to the plaintiff, including, but not limited to,
economic loss.

**COUNT VI: INTENTIONAL INTERFERENCE WITH CONTRACTS v.
BANK AND INSURANCE COMPANIES
CURTIS, COY, BRENN, SHOLANSKY, and All CORPORATE DEFENDENTS:**

101.   The plaintiffs repeat and reiterate each and every allegation
set forth above and incorporate such allegations into this count.

102.   The individual defendant Kevin Curtis controlled the corporate
defendants.

103.   There was an express contract between the corporate defendants
and the Plaintiffs.

104.   The individual defendant Kevin Curtis was aware of the express
contract between the corporate defendants and the Plaintiffs.

105.   The individual defendant Kevin Curtis interfered with the
express contract between the various lending and insurance
companies and the plaintiffs, and induced and caused the corporate
defendants to breach its contract with these institutions. Said
wrongful interference was without right or justification.

106.   Said tortious and wrongful interference caused the plaintiffs
to suffer great damage, including, but not limited to, economic loss.

## COUNT VII: MISREPRESENTATION/PROMISSORY ESTOPPEL

107.  The plaintiffs repeat and reiterate each and every allegation
set forth above and incorporate such allegations into this count.

108.  The defendants Curtis, Lana, Winiker, Merlino, Brenn, Coy,
Shalansky, Curtis Properties, Webster First and all other named
defendants jointly and severally made material representations to
Fiorillo to cause him to part with substantial sums and property.

109.  Plaintiffs tendered substantial real estate, contracts for
deed and purchase agreements to the defendants.

110.  These representations were false or made with reckless
disregard for the truth or with negligent disregard for truth and
with the intention of benefiting themselves in a manner contrary to
law.

111.  Fiorillo relied to his detriment upon the false and fraudulent
representations made directly to him, by tendering to the defendants
jointly and severally, millions of dollars of property, rents,
refinance proceeds and development rights.

112.  By said detrimental reliance, plaintiffs were greatly damaged,
including, but not limited to economic losses.

## COUNT VIII: UNFAIR AND DECEPTIVE PRACTICES IN VIOLATION OF G.L. C.93A SEC. 11 - ALL DEFENDANTS

113.  The plaintiffs repeat and reiterate each and every allegation
set forth above and incorporate such allegations into this count.

114.  The defendants each conduct business within the Commonwealth of
Massachusetts in their normal course of business.

115.  The manner and means described above in which all defendants
conspired against the Plaintiffs were unfair and deceptive as defined
in G.L. c. 93A §11.

116.  As a result of the defendants' unfair and deceptive practices,
Fiorillo suffered in business, loss of real estate, loss of equity in
real property and rents and in his personal and professional
reputation, suffered emotional distress and was otherwise damaged,
including, but not limited to losses in excess of approximately $10
million.

## COUNT X: CONVERSION

117.   The plaintiffs repeat and reiterate each and every allegation set forth above and incorporate such allegations into this count.

118.   Curtis and all other defendants, from time to time converted funds rightfully belonging to Fiorillo and such conduct caused Fiorillo great damage, including, but not limited to economic losses.

## COUNT XI: EQUITABLE RELIEF

119.   Curtis has stated to tenants within the last 10 days at various of the properties that he is in the process of selling, transferring and giving deeds in lieu of foreclosure during the early part of December 2013 because he wants to be out of the real estate business, and these tenants should be aware that a new landlord may be collecting their rents.

120.   If Curtis is given notice of a hearing on a temporary restraining order, based on the above-conduct in which he has been completely involved with fraudulent activity to defeat Fiorillo's interests, it is likely that he will convey, encumber or transfer or otherwise affect the ownership of the properties referred to in the complaint.

121. There is no known liability insurance that is available to compensate Fiorillo for any losses established by the jury and Court in the complaint.

## COUNT XII: DEFAMATION

122.   In an attempt to thwart the plaintiff's claims herein, the defendants Lana and Curtis have openly and conspicuously published falsehoods that Fiorillo is a known drug dealer and drug smuggler.

122. These statements are false and are known to Lana and Curtis to be false.

123. These statements accuse Fiorillo of a crime and are thus *per se* actionable as defamatory statements.

124. In addition to being defamatory, these statements have been made and published to a respectful segment of the Worcester business community with an ulterior purpose to interfere with business relationships now enjoyed by the plaintiff and to interfere with the remedies sought in the instant complaint.

### COUNT XIII:   CONSPIRACY OF LANA, MERLINO AND WINIKER

125. The defendants Lana, Merlino and Winiker have and continue to act in concert to cheat the plaintiff out of rents and property that he is entitled to.

126. These said defendants, well-knowing of the plaintiff's ownership interest in properties including but not limited to 90 Harding Street and 426 Main Street Worcester.

127. These said defendants are attempting to sell, encumber, and borrow against properties so as to defeat the plaintiff's ownership interest and right to rents and profits from the realty.

128. As a result of these defendants actions, including taking rents to which the plaintiff is entitle to a portion of, monies owed to the plaintiff have been diverted to properties owned by these defendants and those entities have benefitted from the infusion capital which they had no right to obtain.

WHEREFORE the plaintiff moves for judgment in the amount of ten million dollars from these said defendants.

ALSO, the plaintiff seeks, because of the activities of the defendants, and because it is necessary to protect the financial interests of Fiorillo who at all times was acting in his capacity as trustee of the plaintiff trusts, that the Court

Issue a temporary restraining order and then a preliminary injunction enjoining all defendants from selling, transferring, alienating, hypothecating, conveying, or refinancing or otherwise obtaining any equitable interest in the properties identified in this Complaint as :426 Main Street,78 Waverly Street, 18 Penn Avenue, 757 Main Street, 90 Harding Street, 85 Winter Street, 70 Harding Street, 27 Chandler Street, 2 North Main, 3 East Main Street,3 Negus Street, 7-12 Cross and Central Street,15-23 Hamilton Street, 144-116 River Street, 110 Pine Street (these properties are located Shrewsbury, Worcester, Webster, Dudley and Southbridge Massachusetts).

Rescind any and all contracts and/or agreements to which Fiorillo's alleged assent has been fraudulently induced, or, in the alternative, to reform any such agreements or instruments.

Appoint a receiver to safeguard all of the assets of the partnership between Fiorillo and Curtis to prevent waste, misuse of partnership assets and defalcation of partnership monies.

Order an award of damages jointly and severally against the defendants to adequately compensate Fiorillo for the damages he has sustained.

Assess against each defendant the greatest amount of special, exemplary or punitive damages as are supported by law or evidence, including but not limited to such double or treble damages assessed in accord with the terms of 18 U.S.C. §1964(c) and M.G.L. c. 93A.

Issue a *lis pendens* applicable to all properties and defendants including their holding companies within the Commonwealth of Massachusetts, including but not limited to:  69 West Street, LLC; Capital Properties Investments, LLC; Fifty Front Street, LLC; FLC Properties, LLC; Worcester RE Investments, LLC; F & P LLC, who are named herein, to provide the status quo while the suit is pending, so that no defendant will be able to encumber, sell, transfer or in any way affect the ownership of property to which the plaintiff is asserting an interest.

Assess against each defendant interest, costs, and attorney fees to the greatest extent permitted by law.

NICHOLAS FIORILLO, TRUSTEE
By his attorney

Nathaniel D. Pitnof
BBO 400660
100 Grove Street
Worcester MA 01605
508-757-3000

I, Nicholas Fiorillo, Trustee, state under the pains and penalties of perjury that the above information contained in this First Amended Complaint is true and accurate according to my knowledge, information and belief, and when based on information and belief I believe it to be true.

/S/

Dated at Worcester, this 22nd day of April 2014.

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

WORCESTER, SS.                    CIVIL ACTION NO. WOCV2013-02251D

NICHOLAS FIORILLO, AS                )
TRUSTEE OF THE FIORILLO             )
FAMILY REVOCABLE TRUST and          )
18 PENN AVENUE REALTY TRUST,        )
        Plaintiff                    )
                                     )
                                     )
v.                                   )
                                     )
KEVIN M. CURTIS, FELICIO LANA       )
d/b/a NORTHEAST PROPERTIES,          )
RICHARD MERLINO, MARK WINIKER,      )
TINA BRENN, DENNIS COY, STEVEN      )
SHALANSKY, CURTIS PROPERTIES,       )
LLC, HOLLISTON MASONRY, INC.,       )
METROWEST PROPERTY                  )
MANAGEMENT, LLC, CANAL              )
MARKETPLACE DEVELOPMENT,            )
LLC, BLACKSTONE LOFTS, LLC,         )
TOR-SHAL CAPITAL, LLC, RIVER        )
STREET REALTY TRUST, THE 426        )
MAIN STREET REALTY, LLC, and        )
WEBSTER FIRST FEDERAL CREDIT        )
UNION,                              )
        Defendants                   )

## DEFENDANT FELICIO LANA'S MOTION PURSUANT TO MASS. R. CIV. P. 12(E) FOR A MORE DEFINITE STATEMENT

Pursuant to Mass. R. Civ. P.12(e), and Superior Court Rules 9(A) and 9(E), defendant Felicio Lana, d/b/a Northeast Properties ("Mr. Lana") moves that the Court order Plaintiffs Nicholas Fiorillo as Trustee of the Fiorillo Family Revocable Trust ("Fiorillo Family Trust") and 18 Penn Avenue Realty Trust ("18 Penn Trust") to provide a more definite statement so that Mr. Lana may fairly respond to Plaintiffs' First Amended Verified Civil Complaint for Money

Damages and Equitable Relief.  In support of this Motion, Defendant Felicio Lana relies on his

Memorandum of Law filed herewith.

FELICIO LANA
By his attorneys,

Michael P. Angelini, BBO#019340
AiVi Nguyen, BBO#675319
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: 508-926-3402
Facsimile:  508-929-3023
E-mail: mangelini@bowditch.com
           anguyen@bowditch.com

## CERTIFICATE OF SERVICE

I, AiVi Nguyen, hereby certify on this 3rd day of June, 2014, I served a copy of the foregoing document, to all counsel of record by causing a copy of same to be sent by first class mail, postage prepaid to:

Nathaniel D. Pitnof, Esq.
100 Grove Street
Worcester, MA 01605

E. John Anastasi, Esq.
245 Main Street, Box 552
Oxford, MA 01540

Russell S. Chernin, Esq.
390 Main Street
Worcester, MA 01608

Douglas J. Emanuel, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903

John A. Mavricos, Esq.
Andrew P. DiCenzo, Esq.
Christopher, Hays, Wojcik & Mavricos, LLP
446 Main Street
Worcester, MA  01608

AiVi Nguyen

2

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

WORCESTER, SS.                              CIVIL ACTION NO. WOCV2013-02251D

NICHOLAS FIORILLO, AS                    )
TRUSTEE OF THE FIORILLO                   )
FAMILY REVOCABLE TRUST and                )
18 PENN AVENUE REALTY TRUST,              )
    Plaintiff                          )
                                          )
                                          )
v.                                        )
                                          )
KEVIN M. CURTIS, FELICIO LANA            )
d/b/a NORTHEAST PROPERTIES,                )
RICHARD MERLINO, MARK WINIKER,            )
TINA BRENN, DENNIS COY, STEVEN            )
SHALANSKY, CURTIS PROPERTIES,             )
LLC, HOLLISTON MASONRY, INC.,             )
METROWEST PROPERTY                        )
MANAGEMENT, LLC, CANAL                    )
MARKETPLACE DEVELOPMENT,                  )
LLC, BLACKSTONE LOFTS, LLC,               )
TOR-SHAL CAPITAL, LLC, RIVER              )
STREET REALTY TRUST, THE 426              )
MAIN STREET REALTY, LLC, and              )
WEBSTER FIRST FEDERAL CREDIT              )
UNION,                                    )
    Defendants                         )

## DEFENDANT FELICIO LANA'S MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO MASS. R. CIV. P. 12(E) FOR A MORE DEFINITE STATEMENT

Pursuant to Mass. R. Civ. P.12(e), and Superior Court Rules 9(A) and 9(E), defendant

Felicio Lana, d/b/a Northeast Properties ("Mr. Lana") moves that the Court order Plaintiffs

Nicholas Fiorillo as Trustee of the Fiorillo Family Revocable Trust ("Fiorillo Family Trust") and

18 Penn Avenue Realty Trust ("18 Penn Trust") to provide a more definite statement so that Mr.

Lana may fairly respond to Plaintiffs' First Amended Verified Civil Complaint for Money

Damages and Equitable Relief (the "Complaint"). The Complaint, which asserts thirteen counts

1

against sixteen defendants on behalf of two indistinguishable Plaintiffs, is so vague and ambiguous that Mr. Lana cannot reasonably be required to frame a responsive pleading because the Complaint fails to assert which Plaintiff makes each assertion, which Plaintiff asserts an interest in the properties that are the subject of this suit, how each Plaintiff was damaged and by which of the sixteen defendants, and fails to plead the predicate acts of fraud with particularity.

The thrust of the Complaint is that various parties, under the control of Defendant Kevin Curtis ("Mr. Curtis"), conspired to divest Nicholas Fiorillo ("Mr. Fiorillo") (not the two Plaintiff trusts) of his interests in various real estate properties throughout Worcester County.   The Plaintiffs allege that the defendants conducted several "sub-schemes" and employed a pattern of insurance, bank, and mail fraud to carry them out.  These allegations are general and conclusory. In most cases the Complaint does not specify which of the Plaintiffs were injured, by which defendants, or as a result of which specific acts.

## I.    ARGUMENT

### A.    Plaintiffs Must Specify to which Plaintiff the Complaint Refers in each Assertion.

The Complaint is pervasively vague and ambiguous regarding the identity of the Plaintiffs.  The named Plaintiff is Mr. Fiorillo in his capacity as Trustee of the Fiorillo Family Trust and of the 18 Penn Trust.  Mr. Fiorillo in his individual capacity is not a plaintiff[1] in this action.  Yet, the Complaint consistently refers only to Mr. Fiorillo and fails to identify whether he was acting on behalf of a Plaintiff Trust and if so, which one. See, *e.g.*, Complaint, ¶ 13 ("*Fiorillo* and Curtis entered into a partnership agreement..."); ¶ 18 ("[The Defendants] conspired to defeat *Fiorillo's* claim to the property and property rights and rents of which *he* is

---

[1] Mr. Fiorillo may have been reluctant or unable to bring these claims in his individual capacity due to his ongoing Chapter 7 bankruptcy proceeding. *In re Fiorillo*, Ch. 7 Case No. 10-44179 (Bankr. D. Mass. filed Aug. 23, 2010).

legally entitled"); ¶ 34 ("Their intention is to cause *Fiorillo* to lose *his* 50% equitable [sic] in the property.") (emphases added).

The identity of the Plaintiffs is a crucial issue because there is a serious question of the Plaintiffs' standing to bring these claims. Standing requires that the plaintiff suffered an injury. See *Statewide Towing Ass'n, Inc. v. City of Lowell*, 68 Mass. App. Ct. 791, 807 (2007). The Complaint does not specify how each Trust has been injured or by whom. Indeed the allegations of injuries in many cases are particular to Mr. Fiorillo individually and not in his capacity as Trustee. For example, the Complaint alleges that Mr. Fiorillo "suffered emotional distress," ¶ 116, had his reputation damaged by defamatory statements, ¶¶ 122-124, and was left "with exposure on his personal guaranty," ¶ 52. These alleged injuries are by definition personal to Mr. Fiorillo. The Plaintiff Trusts do not have standing to assert claims based upon them. The Plaintiffs must specify in the Complaint which of the Trusts suffered which alleged injuries. Without knowing what Plaintiff was allegedly injured, Mr. Lana will be unable to accurately respond to the Complaint's allegations or to fully address the issue of standing.

### B.   Plaintiffs Must Plead Predicate Racketeering Acts with Particularity.

Plaintiffs' civil RICO claims implicate heightened standing and pleading issues. A civil RICO plaintiff must show (1) that his alleged harm qualifies as injury to his business or property, and (2) that his harm was by reason of the RICO violation. See *Prall v. Bush*, No. CA 10-16S, 2010 WL 717780, *5 (D. Mass. Mar. 1, 2010); see also *Hemi Group, LLC v. City of New York, NY*, 559 U.S. 1, 9 (2010) (holding that plaintiff could not assert RICO claim where alleged injury was not directly by reason of alleged RICO violation). The Complaint's vague and ambiguous references to "Fiorillo" or "the plaintiffs" render it entirely inadequate under the RICO proximate cause pleading standard. See *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42-43

(1st Cir. 1991) (affirming dismissal and stating "[i]t is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.").

Furthermore, the allegations of predicate RICO acts must be made with specificity. *Id.* at 42 ("It is settled law in this circuit that Fed.R.Civ.P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO"); *Giuliano v. Fulton*, 399 F.3d 381, 389 (1st Cir. 2005) (affirming dismissal of RICO claim premised on misrepresentation for lack of specificity); *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997) (affirming dismissal of RICO claim that failed to state the time, place and content of alleged mail fraud). Though the Plaintiffs make the bare conclusory assertion of mail and wire fraud (see Complaint, ¶¶ 77-82), they allege no facts as to the time, place or content of any allegedly fraudulent mailings or wires. The Plaintiffs' claims of bank fraud are similarly bare. Complaint, ¶ 82; see *Laverty v. Massad*, Civ. No. 08-40126, 2009 WL 1873646, *5 (D. Mass. Mar. 10, 2009) (Saylor, J.) (dismissing RICO count because the plaintiff did not indicate how the defendant's actions constituted bank fraud). Plaintiff must be ordered to identify the specific acts of fraud asserted against each named defendant, since there are sixteen defendants.

## C.   Plaintiffs Must Specify Against which of the Sixteen Named Defendants it Asserts Each Claim.

Mr. Lana is entitled to a more definite statement so it can address which of Plaintiffs' claims are being made against Mr. Lana, as opposed to some or all of the other fifteen named defendants. The Complaint's RICO counts refer to "Defendants jointly and severally," ¶ 82, "and the other defendants," ¶ 82a, or "one or more of the defendants," ¶ 82b-f. This is insufficient for the purpose of RICO to include Mr. Lana in any alleged conspiracy. See *Roxbury/South End Tenants' Council, Inc. v. Cornerstone Corp.*, 573 F.Supp.2d 359 (D. Mass.

4

2008) ("Several elements of this [RICO] allegation prevent this court from accepting it as well-pleaded: (1) its reliance on 'information and belief[2];' (2) the verb tense 'may have,' which indicates possibility or speculation; and (3) the repeated use of the ambiguous conjunction 'and/or.' Did [defendant] extort a payment or did she not?  From whom did she extort such money?  The Amended Complaint cannot adequately answer these basic questions"); see also *Efron v. Embassy Suites (P.R.) Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.").  The Plaintiffs should be required to state with specificity any particular racketeering acts that they allege to have been committed by Mr. Lana.

Lastly, the Plaintiffs should be required to identify at the very least which defendants need to respond to which of the Complaint's thirteen counts.  Mr. Lana is unable to discern the proponents or targets[3] of several counts.  Given that there are eighteen named parties in this case, it is unreasonable for the counts to use the generic terms "plaintiffs" and "defendants" within the counts of an action that requires particularity and demonstrated proximate cause to pass Rule 12 muster.  Mr. Lana cannot determine how or even if to respond to these counts unless the Plaintiffs provide a more definite statement.  A defendant should not be expected to have to guess at whether or not a claim is asserted against it.  Moreover, the assertion of a frivolous or

---

[2] Although styled as a "Verified Complaint," Mr. Fiorillo merely certifies that the allegations in the Complaint are "true and accurate according to my knowledge, *information and belief...*" (emphasis added).  None of the individual factual allegations are identified as upon information and belief.  Thus the Plaintiffs seek both the benefits of a "verified" complaint, and shelter from the "pains and penalties" of perjury in the event that any of the serious but vague allegations turn out to be unfounded.  The more definite statement should identify which, if any, facts Mr. Fiorillo *knows* to be true such that he is willing to expose himself to the penalties of perjury.

[3] For example, Count III (¶¶ 90-93) states that "[t]he defendant and Mr. Fiorillo entered into binding contracts" and Count IV (¶¶ 94-97) states "[t]he defendant and the plaintiffs entered into a binding contract..." Neither count references a specific Plaintiff or defendant.

5

specious claim against a party can give rise to damages and attorney's fees (see G.L. c. 231, § 6(f), Mass. R. Civ. P. Rule 11) and therefore Plaintiffs must commit themselves to the claims they assert against each defendant.

## II.   CONCLUSION

Over the course of 28 pages the Plaintiffs fail to plead any alleged facts, circumstances, injuries or parties with any specificity. What results is a "grievously murky [Complaint] without sufficient attention to its basis in the substantive law." See *Charbonnier v. Amico*, 367 Mass. 146, 153 (1975).  Mr. Lana respectfully requests this Court grant this Motion for a More Definite Statement so that it may have a reasonably fair opportunity to identify and respond to the Plaintiffs' claims.

**WHEREFORE**, Felicio Lana requests that this Court order the following by way of a more definite statement:

a.   The Plaintiffs shall identify with particularity all predicate racketeering acts and which specific defendant or defendants perpetrated each such act.

b.   The Plaintiffs shall set forth with particularity each fraudulent act or misrepresentation that each named defendant is alleged to have engaged in and how that conduct proximately caused harm to a specified plaintiff.

c.   The Plaintiffs must specify when in time the alleged acts occurred with a reasonable degree of specificity.

d.   The Plaintiffs shall identify the specific Plaintiff who was allegedly harmed by the conduct of a specific, identified defendant.

{Client Files/LIT/311159/0001/PLD/03034475.DOCX;2}

e.      For each parcel of real property referenced in the Complaint, each Plaintiff shall identify the nature of its alleged interest in such property, and shall identify how a specific defendant or defendants interfered with or conspired to interfere with such Plaintiff's interest.

f.      The Plaintiffs shall describe the relationship between each alleged injury and the violation of the RICO statute.

g.      The Plaintiffs shall specify within each Count the particular defendants to which that Count applies.

h.      The amended verified statement of the claim shall properly certify the Complaint as verified under the pains and penalties of perjury, and shall identify, if applicable, any facts that are alleged by Plaintiffs merely on "information and belief."


FELICIO LANA

By his attorneys,


Michael P. Angelini, BBO#019340
AiVi Nguyen, BBO#675319
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: 508-926-3402
Facsimile:  508-929-3023
E-mail: mangelini@bowditch.com
        anguyen@bowditch.com


7

## **CERTIFICATE OF SERVICE**

I, AiVi Nguyen, hereby certify on this 3rd day of June, 2014, I served a copy of the foregoing document, to all counsel of record by causing a copy of same to be sent by first class mail, postage prepaid to:

Nathaniel D. Pitnof, Esq.
100 Grove Street
Worcester, MA 01605

Douglas J. Emanuel, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903

E. John Anastasi, Esq.
245 Main Street, Box 552
Oxford, MA 01540

John A. Mavricos, Esq.
Andrew P. DiCenzo, Esq.
Christopher, Hays, Wojcik & Mavricos, LLP
446 Main Street
Worcester, MA  01608

Russell S. Chernin, Esq.
390 Main Street
Worcester, MA 01608

_____
AiVi Nguyen

8

{Client Files/LIT/311159/0001/PLD/03034475.DOCX;2}

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

WORCESTER, SS.                               CIVIL ACTION NO. WOCV2013-02251D

NICHOLAS FIORILLO, AS            )
TRUSTEE OF THE FIORILLO         )
FAMILY REVOCABLE TRUST and  )
18 PENN AVENUE REALTY TRUST, )
    Plaintiff                             )
                                                  )
v.                                                )
                                                  )
KEVIN M. CURTIS, FELICIO LANA  )
d/b/a NORTHEAST PROPERTIES,    )
RICHARD MERLINO, MARK WINIKER, )
TINA BRENN, DENNIS COY, STEVEN  )
SHALANSKY, CURTIS PROPERTIES,  )
LLC, HOLLISTON MASONRY, INC.,  )
METROWEST PROPERTY               )
MANAGEMENT, LLC, CANAL          )
MARKETPLACE DEVELOPMENT,    )
LLC, BLACKSTONE LOFTS, LLC,      )
TOR-SHAL CAPITAL, LLC, RIVER     )
STREET REALTY TRUST, THE 426     )
MAIN STREET REALTY, LLC, and     )
WEBSTER FIRST FEDERAL CREDIT  )
UNION,                                         )
    Defendants                          )

## FELICIO LANA'S RULE 9E NOTICE OF MOTION
## FOR A MORE DEFINITE STATEMENT

Defendant, Felicio Lana d/b/a Northeast Properties, hereby provides Notice pursuant to

Massachusetts Superior Court Rule 9E that it has served pursuant to Superior Court Rule 9A

Felicio Lana's Motion Pursuant to Mass. R. Civ. P. 12(E) for a More Definite Statement and

Memorandum in Support.

FELICIO LANA
By his attorneys,

Michael P. Angelini, BBO#019340
AiVi Nguyen, BBO#675319
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: 508-926-3402
Facsimile:  508-929-3023
E-mail: mangelini@bowditch.com
anguyen@bowditch.com

## CERTIFICATE OF SERVICE

I, AiVi Nguyen, hereby certify on this 3rd day of June, 2014, I served a copy of the foregoing document, to all counsel of record by causing a copy of same to be sent by first class mail, postage prepaid to:

Nathaniel D. Pitnof, Esq.
100 Grove Street
Worcester, MA 01605

Douglas J. Emanuel, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903

E. John Anastasi, Esq.
245 Main Street, Box 552
Oxford, MA 01540

John A. Mavricos, Esq.
Andrew P. DiCenzo, Esq.
Christopher, Hays, Wojcik & Mavricos, LLP
446 Main Street
Worcester, MA  01608

Russell S. Chernin, Esq.
390 Main Street
Worcester, MA 01608

AiVi Nguyen

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
WORCESTER SESSION

WORCESTER, SS.:                        CIVIL ACTION NO.: 2013-CV-2251D

NICHOLAS FIORILLO, Trustee,      )
                 Plaintiff      )
                               )
V.                                     )
                               )
KEVIN M. CURTIS, et als.,         )
                Defendant      )

ANSWER OF
CANAL MARKETPLACE DEVELOPMENT, LLC
TO THE FIRST AMENDED COMPLAINT

1. Canal Marketplace Development, LLC ("Canal") is without sufficient knowledge to either admit or deny the allegations contained in paragraphs one through seven of the First Amended Complaint.

2. Canal denies the allegations contained in paragraph eight of the First Amended Complaint.

3. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs nine through eleven of the First Amended Complaint.

4. Canal admits the allegations contained in paragraph twelve of the First Amended Complaint.

5. Canal denies the allegations contained in the paragraph entitled "Nature of the Case".

6. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs thirteen through seventeen of the First Amended Complaint.

7. Canal denies the allegations contained in paragraphs eighteen and nineteen of the First Amended Complaint.

8. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs twenty through 26 of the First Amended Complaint.

9. Canal denies the allegations contained in paragraphs 27 of the First Amended Complaint.

10. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 28 through 56 of the First Amended Complaint.

11. Canal denies the allegations contained in paragraph 57 of the First Amended Complaint. Further answering, Canal states that the winning bidder at said auction was an entity known as Branch Avenue Capital Partners.

12. Canal denies the allegations contained in paragraph 58 of the First Amended Complaint. Further answering, Canal states that Mark Winiker is the holder of a 99% membership interest in Canal. The remaining one percent interest is, according to the records of Canal, held by Mr. Curtis. The records of Canal reflect that Mr. Fiorillo does not have an interest in Canal.

13. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 59 and 60 of the First Amended Complaint.

14. Canal denies the allegations contained in paragraphs 61 and 62 of the First Amended Complaint. Canal states that Mr. Fiorillo did not have an interest in Canal.

15. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 63 through 70 of the First Amended Complaint.

16. Canal denies the allegations contained in paragraphs 71 through 73 of the First Amended Complaint.

## Count I

17. In response to paragraph 74, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

18. Canal denies the allegations contained in paragraphs 75 through 85 (including all sub-paragraphs) of the First Amended Complaint.

## Count II

19. In response to paragraph 86, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

20. Canal denies the allegations contained in paragraphs 87 through 89 of the First Amended Complaint.

## Count III

21. In response to paragraph 90, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

22. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 91 through 93 of the First Amended Complaint.

## Count IV

23. In response to paragraph 94, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

24. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 95 through 97 of the First Amended Complaint.

## Count V

25. In response to paragraph 98, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

26. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 99 and 100 of the First Amended Complaint.

## Count VI

27. In response to paragraph 101, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

28. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 102 through 106 of the First Amended Complaint.

## Count VII

29. In response to paragraph 107, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

30. Canal denies the allegations contained in paragraphs 108 through 112 of the First Amended Complaint.

## Count VIII

31. In response to paragraph 113, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

32. Canal admits the allegations contained in paragraph 114 of the First Amended Complaint.

33. Canal denies the allegations contained in paragraphs 115 and 116 of the First Amended Complaint.

## Count X
## (There does not appear to be a Count IX)

34. In response to paragraph 117, Canal restates its answers to each and every prior allegation as if said answers had been fully set forth herein.

35. Canal denies the allegations contained in paragraph 118 of the First Amended Complaint.

## Count XI

36. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 119 through 121 of the First Amended Complaint

## Count XII

37. Canal is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 122 through 124 of the First Amended Complaint.

## Count XIII

38. Canal denies the allegations contained in paragraphs 125 through 128 of the First Amended Complaint.

4

### First Affirmative Defense

The claims for relief against Canal must be dismissed since said claims fail to comply with the Statute of Frauds.

### Second Affirmative Defense

The claims for relief against Canal must be dismissed because plaintiff is not the holder of any claims against Canal and Canal never transacted any business with the named plaintiff.

WHEREFORE, Canal demands that the complaint be dismissed as against it, and that Canal be awarded its costs of defense and attorney's fees pursuant to chapter 231, section 6F of the General Laws for having to defend these frivolous, vexatious, and meritless claims, and that the court grant to Canal such additional relief as it deems just and proper.

Respectfully submitted,

*Russell S. Chernin*

Russell S. Chernin, Esq. (No.: 082050)
390 Main Street
Worcester, MA 01608
Tel.: 508-753-8118
Counsel for Canal Marketplace
    Development, LLC

### CERTIFICATE OF SERVICE

I hereby certify that on this day I sent a copy of the within pleading to Nathaniel D. Pitnof, Esq., 100 Grove Street, Worcester, MA 01605, Michael Angelini, Esq., Bowditch & Dewey, 311 Main Street, Worcester, MA 01608, Andrew P. DiCenzo, Esq., Christopher, Hays, et als., 446 Main Street, Worcester, MA 01608, E. John Anastasi, Esq., 245 Main Street, Oxford, MA 01540, Douglas J. Emanuel, Esq., Chace, Ruttenberg & Freedman, One Park Row, Suite 300, Providence, RI 02903 postage prepaid, first class mail.

Date: 23 May 2014

*Russell S. Chernin*

Russell S. Chernin

5

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT
WOCV 2013-02251-D

NICHOLAS FIORILLO, as
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST

v.

KEVIN M. CURTIS, *et al.*

### MEMORANDUM OF DEFENDANTS TOR-SHAL CAPITAL, LLC AND STEVEN SHALANSKY IN SUPPORT OF THEIR MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO RULE 12(e)

Defendants Tor-Shal Capital, LLC ("Tor-Shal") and Steven Shalansky ("Shalansky") have moved the Court for an Order compelling the plaintiff to file a More Definite Statement regarding the allegations – both factual and legal – directed against them in the Complaint filed by the plaintiff, Nicholas Fiorillo, as Trustee of the Fiorillo Family Revocable Trust and 18 Penn Avenue Realty Trust.

Tor-Shal relies on this memorandum of law in support of the motion.

### Background

Fiorillo states that "the RICO Defendants have conspired to embezzle, extort, convert and launder money and property and monthly property rents from the trusts of which Fiorillo is the Trustee." *Complaint*, at page 2.[1]  He continues to say that "the RICO defendants have "used their real estate business dealings with Fiorillo and the trusts" and certain properties and rental incomes "to carry out this scheme." *Id.*

---

[1] The Complaint's pages are not numbered.  The language cited here is in the unnumbered paragraph on the unnumbered page.

One of the **many** deficiencies in the Complaint is that neither Tor-Shal nor Shalansky has ever had any dealings with Fiorillo or his trusts, and thus do not fall within the definition of defendants against which Fiorillo complains.

In point of fact, neither Shalansky nor Tor-Shal have *any* connection to Fiorillo whatsoever. Rather, Tor-Shal loaned money to defendants Curtis Properties, LLC and Metrowest Property Management, LLC.  Shalansky is the owner and manager of Tor-Shal, but otherwise has no individual connection to any of the indecipherable allegations of the Complaint.

Prior to moving to dismiss[2] the Complaint as to Tor-Shal and Shalansky for failing to state a claim upon which relief may be granted, Tor-Shal and Shalansky first seek an order of the Court requiring the plaintiff to at least articulate what conduct of theirs Fiorillo alleges caused him harm.[3]

### Rule 12(e)

Pursuant to Rule 12(e) of the Rules of Civil Procedure, the Court may order a more definite statement "if a pleading to which a responsive pleading is permitted is so vague and ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Mass. R. Civ. P. 12(e).  "A pleading may be so murky that it defies any intelligent response. ... Rule 12(e) permits the responding party to bring his specific inability to the court's attention and permits the court to order an appropriate amendment."  Mass. Super. R. 12(e) (Reporter's Notes, 1973).

When confronted with a pleading that is confusing, prolix or replete with scurrilous or unnecessary material, Rule 12(e) is a remedy, *Handy v. Kraft*, 2004 WL 2735182 (Mass. App. Div. Nov. 29, 2004).  The Court may require a more definite statement from a plaintiff that sets forth "specific factual allegations" against the defendants. *Pachanian v. Garabedian*, 1998 WL 1182064 (Mass. Super. Feb. 25, 1998).  The nature of a motion under Rule 12(e) is to "smoke out the nature

---

[2] And perhaps before moving for sanctions pursuant to Rule 11...
[3] As will be addressed below, one of the areas as to which Tor-Shal and Shalansky seek more definite allegations is exactly where the two Trusts named as plaintiffs have a role in these proceedings.

of the plaintiff's grievance." *Epstein v. Liberty Bank & Trust Co.*, 429 N.E.2d 352 (1981) (inviting such a motion where the complaint is "grievously murky").

Fiorillo's Complaint is the epitome of grievous murkiness. A more definite statement as to the allegations of Tor-Shal and Shalansky is required in order for these defendants to prepare an answer.

*Allegations Requiring More Definition*

Tor-Shal and Shalansky request that the Court order more definition as to the following aspects of Fiorillo's putative claim(s) against them:

### 1. Who is the plaintiff, and what is its (or their) role?

The caption of the complaint names "Nicholas Fiorillo, in his capacity as Trustee of the Fiorillo Family Revocable Trust and 18 Penn Avenue Realty Trust" as the plaintiff. Yet notwithstanding its 128 numbered paragraphs (and occasional unnumbered paragraphs), the Complaint is devoid of any information as to how the Trusts are involved. Instead, the Complaint ambiguously uses "Fiorillo" throughout the Complaint. *See, e.g., Complaint*, ¶ 13 ("Fiorillo and Curtis entered into a partnership agreement...").

Fiorillo is not aided by his definition of Fiorillo in Paragraph 1 of the Complaint. He has failed to include the Trusts within his definition of the capitalized term "Fiorillo." Neither Tor-Shal nor Shalansky is attempting to elevate form over substance, but the Complaint is replete with ambiguity as to whether Fiorillo's claims are his individually or whether they belong to either one or both of the Trusts, and if so, why.

Thus, Tor-Shal and Shalansky request a more definite statement as to who the plaintiff is (or who the plaintiffs are).

3

## 2. Who are "the RICO Defendants"?

In the unnumbered paragraph on the second page of the Complaint, the plaintiff speciously refers to "the RICO Defendants," without defining who they are or what they seem to have done that causes them to be lumped together as RICO defendants.

If either Shalansky or Tor-Shal is included in the term "the RICO Defendants," they are entitled to know that prior to answering the Complaint.

## 3. What is being alleged in Paragraph 18 of the Complaint?

In Paragraph 18, the plaintiff suggests that all of the "individual defendants and the various LLC defendants" were formed "to purchase, build out and develop and maintain various partnership projects of Fiorillo and Curtis." *Complaint,* ¶ 18.

It is beyond comprehension to suggest that Shalansky - an individual – was "formed" to do anything. And it is unclear – at best – as to whether Fiorillo is lumping Tor-Shal into a group of defendants that may have been formed for this specific purpose.[4] But in either event, Tor-Shal cannot form a response to this paragraph as it is unclear who it is intended to include.

## 4. How did Curtis "control" Shalansky and/or Tor-Shal?

In Paragraph 19, the plaintiff alleges that Curtis "instructed, controlled and employed all of the defendants." *Complaint,* ¶ 19. By its terms, this statement applies to individual defendants, like Shalansky, but it is hard to fathom how Curtis "controlled" Shalansky. And since Curtis is neither an owner, a member nor a manager of Tor-Shal, it is likewise inconceivable to see how Curtis could have "controlled" Tor-Shal. The plaintiff should be required to be more definite about what he is alleging and against whom it is being alleged.

---

[4] Tor-Shal was not formed for the purpose alleged.

### 5.   *What is being alleged in Paragraph 27 of the Complaint?*

The plaintiff makes unsupported allegations of "bank and mail fraud." The circumstances supporting allegations of fraud are required to be pleaded "with particularity." Mass. R. Civ. P. 9(b). Since the plaintiff has not given any substantive information regarding the instances of "bank and mail fraud" that any one or more of the defendants may have committed, a more definite statement is required.

The little information that the plaintiff has given is circumspect and minimal. The plaintiff suggests that the "bank and mail fraud" consisted, at least in part, of representations to "private banks." Tor-Shal *is* a private bank, and Shalansky is its manager. It is unclear as to whether the plaintiff is alleging that either Tor-Shal or Shalansky made a representation to itself, or whether either or both of them made a representation to other private banks.[5]

### 6.   *What was the nature and extent of the "conspiracy" alleged in Paragraph 28?*

"Fraud" is not the only significant term Fiorillo cavalierly uses throughout his Complaint. Much of his claims are tainted with the word "conspiracy," without a shred of allegations as to how any one or more of the defendants "conspired" with each other. Moreover, for Shalansky or Tor-Shal to be involved in any conspiracy,[6] it necessarily entails that they knew of Curtis's intentions and proactively joined in them.[7]

Moreover, the "conspiracy" alleged in Paragraph 28 refers to the refinancing of "these properties," without even identifying which properties were included in the "conspiracy."[8]

---

[5] They didn't.
[6] There wasn't one.
[7] They didn't.
[8] Of the 15 properties listed in the unnumbered paragraph on the second page of the Complaint, Tor-Shal is a mortgage holder on only three. And Shalansky has no connection to any of those three properties other than as an owner and representative of Tor-Shal.

The Complaint requires more definitive allegations as to Shalansky's and Tor-Shal's purported involvement in any "conspiracy."

### 7. *What is being alleged in Paragraph 83?*

Glossing over the plaintiff's reference to the non-existent "Tol-Sham LLC," it is unclear as to what the plaintiff is alleging in Paragraph 83. It is unclear as to which defendants were reinvesting which proceeds into which companies. It is unfathomable to think that would be actionable for Shalansky to reinvest in his own company, and it is unfounded and untrue for the plaintiff to allege that any other entity is investing in Tor-Shal.

This paragraph requires further definition.

### 8. *How do the facts alleged against Tor-Shal and Shalansky justify the several claims brought against them?*

Notwithstanding the several instances where they are lumped in with "all defendants," the specific references to Tor-Shal and Shalansky in the Complaint are very limited.

Paragraphs 5, 6 and 7 make jurisdictional allegations.

Paragraph 28 includes Shalansky and "Tor-Sham [sic]" within an undefined purported conspiracy.

That's it.

From those "facts," Fiorillo then lumps Tor-Shal and Shalansky into a criminal enterprise and charges it with racketeering and corruption, among other things. *Complaint,* ¶ 75.

Moreover, without any factual support whatsoever, the Complaint specifically charges Shalansky – individually[9] – with mail and wire fraud (¶ 82a); insurance fraud (¶ 82d); and money

---

[9] This allegation is truly head-scratching, as Tor-Shal (and not Shalansky) made the loans to Curtis Properties, LLC and Metrowest Property Management, LLC.

laundering (¶ 82e) simply because it loaned money to Curtis Properties, LLC and Metrowest

Property Management, LLC, and took security positions in certain properties in return.[10]

### 9. *What is being alleged in Count II?*

Count II is entitled "Civil RICO Conspiracy," yet alleges that the conduct of "the members

of the Curtis Enterprise" constituted a "criminal conspiracy." *Complaint*, ¶ 88.  The plaintiff should

be required to define what the plaintiff is alleging, and specifically what conduct is actionable, so that

Tor-Shal and Shalansky can properly respond.

### 10. *What is being alleged in Count III?*

Count III is entitled "Breach of Contract v. Fiorillo-Curtis Partnership."  It alleges that "the

defendant and Fiorillo" entered into a contract that (the plaintiff alleges) was breached.

Given that the plaintiff has identified sixteen defendants, and given that the caption of the

claim suggests he is suing something that it is not named as a defendant ("the Fiorillo-Curtis

Partnership"), if either Shalansky or Tor-Shal is alleged to be an object of this claim, the plaintiff

ought to provide a more definite statement as to what is being alleged, and against whom it is being

alleged.

### 11. *What is being alleged in Count IV?*

Count IV is entitled "Breach of Contract v. Bank & Insurance Fraud Scheme."  In this

count, the plaintiff alleges that "the defendant and the plaintiffs[11]" entered into a contract.  It does

not identify which of the sixteen defendants this count refers to, nor does it provide even a hint as

to what the nature of the contract was.

---

[10] As if there was not any more need to justify a more definite statement, it is unclear whether the plaintiff (wrongfully) includes either Tor-Shal or Shalansky in the "one or more of the defendants" named in ¶ 82b (extortion), ¶ 82c (bank fraud) or ¶82f (obstruction of justice).

[11] Apparently, 95 paragraphs into the Complaint, we first learn that there are multiple plaintiffs.

If either Shalansky or Tor-Shal is alleged to be an object of this claim, the plaintiff ought to provide a more definite statement as to what contract is at issue, what is being alleged, and against whom it is being alleged.

### 12. What is being alleged in Count VI?

Count VI is a claim for intentional interference with contracts, and it purports to be brought against "Sholansky [sic]" and "all corporate defendants [sic]." Yet in the body of the claim, *Complaint*, ¶ 101-106, the plaintiff complains only of Curtis's interference with a certain express contract between the corporate defendants and "the plaintiffs."

Given that the caption of the claim indicates that the claim is against "Sholansky [sic]" and "all corporate defendants [sic]," but the body of the claim complains only of Curtis's conduct, a more definite statement is required to clear up this contradiction.[12] It would also help if the plaintiff identified precisely what contract Curtis interfered with, and with whom (specifically) the plaintiff had that contract.

If either Shalansky or Tor-Shal is alleged to be an object of this claim, the plaintiff ought to provide a more definite statement as to what is being alleged, and against whom it is being alleged.

### 13. What is being alleged in Count VII?

Count VII claims that Shalansky ("and all other named defendants") made misrepresentations to Fiorillo. Yet absolutely absent from the Complaint is any allegation that Shalansky (either individually or on behalf of Tor-Shal) ever spoke to Fiorillo, knows Fiorillo or otherwise communicated with Fiorillo in connection with any of the transactions at issue. Moreover, equally absent is any allegation as to how Fiorillo (or whoever the proper plaintiff is) materially relied on any such statement by Shalansky (either individually or on behalf of Tor-Shal).

---

[12]For what it's worth, the plaintiff alleges that Curtis controlled all of the corporate defendants, and then alleges that Curtis interfered with their contracts. An entity cannot be held to have interfered with its own contract. *Harrison v. NetCentric Corp.*, 422 Mass. 465-477-78 (2001).

If the plaintiff is suggesting that Shalansky (either individually or on behalf of Tor-Shal) made statements (whether true or untrue) to him upon which he relied, he should be obligated to identify what statements they were, and how he relied upon them.

### 14. What is being alleged in Count X?

Count X claims that Tor-Shal and Shalansky converted funds rightfully belonging to Fiorillo.

Tor-Shal is a lender. It loaned its own money to Curtis Properties, LLC and Metrowest Property Management, LLC. There is no allegation in the Complaint as to what funds "rightly belonging to Fiorillo" either Shalansky or Tor-Shal possessed, or how either of them converted those funds by loaning money to Curtis Properties, LLC and Metrowest Property Management, LLC.

If either Shalansky or Tor-Shal is alleged to be an object of this claim, the plaintiff ought to provide a more definite statement as to what is being alleged, and a rational factual basis for the allegation.

### CONCLUSION

There are not many things that are clear from the Complaint. One thing that is clear, however, is that some plaintiff thinks that Kevin Curtis owes him something as a result of their business dealings together. But one of the many – many – things that is unclear as to what allegations are being frivolously launched against a private lender and its principal after having loaned money to (and not having obtained money from) Kevin Curtis and his entities.

WHEREFORE, for the reasons set forth herein, Tor-Shal and Shalansky move the Court

for an order requiring the plaintiff to provide a more definite statement as to (a) who the proper

plaintiff is and how it is connected to these proceedings; (b) the specific facts that support its claims

against Tor-Shal and Shalansky; and (c) the precise nature of the legal theories that are predicated on

those facts.

TOR-SHAL CAPITAL, LLC and
STEVEN SHALANSKY,
By their attorney,

Douglas J. Emanuel (628368)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI  02903
Tel.: (401) 453-6400
Fax:  (401) 453-6411
Dated:  May 23, 2014          Email: demanuel@crfllp.com

## CERTIFICATION

I hereby certify under the pains and penalties of perjury that I forwarded a copy of the within memorandum via first class mail, postage prepaid, on the 23rd day of May, 2014, to Nathaniel D. Pitnof, Esq., 100 Grove Street, Worcester, MA  01605, to E. John Anastasi, Esq., 245 Main Street, P.O. Box 552, Oxford, MA  01540-0552, to John A. Mavricos, Esq., 446 Main Street, 8th Floor, Worcester, MA  01608, and to Russell S. Chernin, Esq., 390 Main Street, Worcester, MA 01608.

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT
WOCV 2013-02251-D

NICHOLAS FIORILLO, as
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST

v.

KEVIN M. CURTIS, *et al.*

### MOTION OF DEFENDANTS TOR-SHAL CAPITAL, LLC AND STEVEN SHALANSKY FOR MORE DEFINITE STATEMENT PURSUANT TO RULE 12(e)

Defendants Tor-Shal Capital, LLC and Steven Shalansky (collectively, "Tor-Shal") hereby move the Court for an Order compelling the plaintiff to file a More Definite Statement regarding the allegations – both factual and legal – directed against them in the Complaint filed by the plaintiff, Nicholas Fiorillo, as Trustee of the Fiorillo Family Revocable Trust and 18 Penn Avenue Realty Trust.

In support of this motion, Tor-Shal relies on the memorandum of law served contemporaneously herewith.

TOR-SHAL CAPITAL, LLC and
STEVEN SHALANSKY,
By their attorney,

_____
Douglas J. Emanuel (628368)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: May 23, 2014

## CERTIFICATION

I hereby certify under the pains and penalties of perjury that I forwarded a copy of the within memorandum via first class mail, postage prepaid, on the 23rd day of May, 2014, to Nathaniel D. Pitnof, Esq., 100 Grove Street, Worcester, MA  01605, to E. John Anastasi, Esq., 245 Main Street, P.O. Box 552, Oxford, MA  01540-0552, to John A. Mavricos, Esq., 446 Main Street, 8th Floor, Worcester, MA  01608, and to Russell S. Chernin, Esq., 390 Main Street, Worcester, MA 01608.



## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

SUPERIOR COURT
WOCV 2013-02251-D

NICHOLAS FIORILLO, as
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST

v.

KEVIN M. CURTIS, *et al.*

## NOTICE OF SERVICE OF
## MOTION FOR MORE DEFINITE STATEMENT

Pursuant to Superior Court Rule 9E, defendants Tor-Shal Capital, LLC and Steven

Shalansky hereby give notice that on Friday, May 23, 2014, their counsel served counsel of record

for the plaintiff with their Motion for More Definite Statement Pursuant to Mass. R. Civ. P. 12(e).

TOR-SHAL CAPITAL, LLC and
STEVEN SHALANSKY,
By their attorney,

Douglas J. Emanuel (628368)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI  02903
Tel.: (401) 453-6400
Fax:  (401) 453-6411
Dated:  May 23, 2014
Email: demanuel@crfllp.com

## CERTIFICATION

I hereby certify under the pains and penalties of perjury that I forwarded a copy of the
within Notice via first class mail, postage prepaid, on the 23rd day of May, 2014, to Nathaniel D.
Pitnof, Esq., 100 Grove Street, Worcester, MA  01605, to E. John Anastasi, Esq., 245 Main Street,
P.O. Box 552, Oxford, MA  01540-0552, to John A. Mavricos, Esq., 446 Main Street, 8th Floor,
Worcester, MA  01608, and to Russell S. Chernin, Esq., 390 Main Street, Worcester, MA  01608.

May 20, 2014

Kevin David, Esq.
Webster First Federal Credit Union
271 Greenwood Street
P.O. 70505
Worcester MA 01607

*via certified mail return receipt 7008 1830 0002 0398 5129*

**RE:  FIORILLO, TRUSTEE v WEBSTER FIRST ET AL**
**WOCV2013-02251D**

Dear Attorney David:

I am sending this to you in your capacity as an attorney for the
Webster First Credit Union, pursuant to the requirement of
General Laws Chapter 184 § 15 (b), a copy of a *lis pendens*
ordered by the Court, Honorable Davis, J.

A further hearing on the *lis pendens* is scheduled on Tuesday,
June 3, 2014 before Davis, J. in the D session of the Superior
Court, 225 Main Street, Worcester MA 01608.

Sincerely,

Nathaniel D. Pitnof

WORCESTER, SS.

SUPERIOR COURT
WOCV2013-02251D



FILED

MAY 1 9 2014

ATTEST: _____ CLERK

NICHOLAS FIORILLO, AS
TRUSTEE OF THE FIORILLO
FAMILY REVOCABLE TRUST and
18 PENN AVENUE REALTY TRUST
    Plaintiff

<u>MEMORANDUM OF *LIS PENDENS*</u>

v

KEVIN M. CURTIS, FELICIO
LANA d/b/a NORTHEAST PROPERTIES et al
    Defendants


To the Registrar of the Worcester County Registry of Deeds:

This Court having found that **the subject matter of the instant action constitutes a claim of a right to title to real property or the use and occupation thereof or the buildings thereon** pursuant to Mass. Gen. L. c. 184, sec 15 (b), you are hereby Ordered,

to record and make notation of this Memorandum of *Lis Pendens* on the following properties:


        i)   426 Main Street, Worcester MA as reflected by B.34132 P. 305


        ii)  757 Main Street, Shrewsbury MA as reflected by B.47407 P.219


        iii) 90 Harding Street, Worcester MA as reflected by B.49202 P. 1


        iv)  2 North Main Street, Webster MA as reflected by B.48157 P 321

v)    3 East Main Street, Webster MA as reflected by B.48599 P.243

vi)   3 Negus Street, Webster MA as reflected by B.48157 P.324

vii)  9 Cross Street and 26 Central Ave., Dudley MA as reflected by B.47528 P.15

viii)   15-23 Hamilton Street, Southbridge MA as reflected by B.47527 P.397

ix)    114-116 River Street, Southbridge MA as reflected by B.47070 P.243 and B.47070 P.246

x)    110 Pine Street, Southbridge MA as reflected by B.47527 P.392

So ordered,

_____
Honorable Davis, J.
Justice of the Superior Court

May 20, 2014

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
WORCESTER SESSION

WORCESTER, SS.:                          CIVIL ACTION NO.: 2013-CV-2251D

NICHOLAS FIORELLO, Trustee,            )
                            Plaintiff    )
                                         )
V.                                       )
                                         )
KEVIN M. CURTIS, et als.,                )
                            Defendant    )

ANSWER OF MARK WINIKER TO THE
FIRST AMENDED COMPLAINT

1. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs one through eleven of the First Amended Complaint.

2. Mr. Winiker admits the allegations contained in paragraph twelve of the First Amended Complaint.

3. Mr. Winiker denies the allegations contained in the paragraph entitled "Nature of the Case".

4. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs thirteen through eighteen of the First Amended Complaint.

5. Mr. Winiker denies the allegations contained in paragraph nineteen of the First Amended Complaint.

6. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs twenty through 26 of the First Amended Complaint.

7. Mr. Winiker denies the allegations contained in paragraphs 27 and 28 of the First Amended Complaint.

8. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 29 and 30 of the First Amended Complaint.

9. Mr. Winiker denies the allegations contained in paragraph 31 of the complaint. Further answering, and upon information and belief, Mr. Winiker states that, at all times

1

material and relevant to the events described in this complaint, the property referred to in paragraph 31 was owed by an entity known as The 426 Main Street Realty, LLC. In 2009, Mr. Fiorillo, in his individual capacity, purchased one hundred percent of the membership interest in said entity from its then owner, one Perry Boudreau. Thereafter, the membership interest reverted to Mr. Boudreau as a result of Mr. Fiorillo's breaches of his agreements with Mr. Boudreau.

10. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraph 32 of the First Amended Complaint.

11. Mr. Winiker admits that portion of the allegations of paragraph 33 of the First Amended Complaint that state that Mr. Curtis has failed to tender mortgage payments, real estate tax payments, water payments, and sewer payments. Mr. Winiker is without sufficient knowledge to either admit or deny the remaining allegations of said paragraph.

12. Mr. Winiker denies the allegations contained in paragraph 34 of the First Amended Complaint. Further answering, Mr. Winiker states that there is no equity in the property that is the subject of said paragraph, and that he is simply considering exercising his rights as a mortgagee.

13. Mr. Winiker denies the allegations contained in paragraph 35 of the First Amended Complaint. Further answering, Mr. Winiker states that he did not retain Mr. Lana to manage the said property.

14. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 36 through 56 of the First Amended Complaint.

15. Mr. Winiker denies the allegations contained in paragraph 57 of the First Amended Complaint. Further answering, Mr. Winiker states that the winning bidder at said auction was an entity known as Branch Avenue Capital Partners.

16. Mr. Winiker denies the allegations contained in paragraph 58 of the First Amended Complaint. Further answering, Mr. Winiker states that he is the holder of a 99% membership interest in an entity known as Canal Marketplace Development, LLC. The remaining one percent interest is, to the best of Mr. Winiker's knowledge and belief, held by Mr. Curtis. To the best of Mr. Winiker's knowledge and information, Mr. Fiorillo does not have an interest in Canal Marketplace Development, LLC. Mr. Winiker states that his interest in the entity was his requirement in exchange for his investment in the project. In addition, Mr. Fiorillo knew of Mr. Winiker's interest no later than 27 June 2012.

17. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 59 and 60 of the First Amended Complaint.

18. Mr. Winiker denies the allegations contained in paragraphs 61 and 62 of the First Amended Complaint.  Mr. Winiker states that Mr. Fiorillo did not have an interest in Canal Marketplace Development, LLC.

19. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 63 through 70 of the First Amended Complaint.

20. Mr. Winiker denies the allegations contained in paragraphs 71 through 73 of the First Amended Complaint.

Count I

21. In response to paragraph 74, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

22. Mr. Winiker denies the allegations contained in paragraphs 75 through 85 (including all sub-paragraphs) of the First Amended Complaint.

Count II

23. In response to paragraph 86, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

24. Mr. Winiker denies the allegations contained in paragraphs 87 through 89 of the First Amended Complaint.

Count III

25. In response to paragraph 90, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

26. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 91 through 93 of the First Amended Complaint.

Count IV

27. In response to paragraph 94, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

3

28. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 95 through 97 of the First Amended Complaint.

## Count V

29. In response to paragraph 98, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

30. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 99 and 100 of the First Amended Complaint.

## Count VI

31. In response to paragraph 101, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

32. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 102 through 106 of the First Amended Complaint.

## Count VII

33. In response to paragraph 107, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

34. Mr. Winiker denies the allegations contained in paragraphs 108 through 112 of the First Amended Complaint.

## Count VIII

35. In response to paragraph 113, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

36. Mr. Winiker admits the allegations contained in paragraph 114 of the First Amended Complaint.

37. Mr. Winiker denies the allegations contained in paragraphs 115 and 116 of the First Amended Complaint.

## Count X
### (There does not appear to be a Count IX)

38. In response to paragraph 117, Mr. Winiker restates his answers to each and every prior allegation as if said answers had been fully set forth herein.

39. Mr. Winiker denies the allegations contained in paragraph 118 of the First Amended Complaint.

## Count XI

40. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 119 through 121 of the First Amended Complaint

## Count XII

41. Mr. Winiker is without sufficient knowledge to either admit or deny the allegations contained in paragraphs 122 through 124 of the First Amended Complaint.

## Count XIII

42. Mr. Winiker denies the allegations contained in paragraphs 125 through 128 of the First Amended Complaint.

## First Affirmative Defense

The claims for relief against Mr. Winiker must be dismissed since said claims fail to comply with the Statute of Frauds.

## Second Affirmative Defense

The claims for relief against Mr. Winiker must be dismissed because plaintiff is not the holder of any claims against Mr. Winiker and Mr. Winiker never transacted any business with the named plaintiff.

WHEREFORE, Mark Winiker demands that the complaint be dismissed as against him, and that he be awarded his costs of defense and attorney's fees pursuant to chapter 231, section 6F of the General Laws for having to defend these frivolous, vexatious, and meritless claims, and that the court grant to Mr. Winiker such additional relief as it deems just and proper.

Respectfully submitted,

*Russell S. Chernin*

Russell S. Chernin, Esq. (No.: 082050)
390 Main Street
Worcester, MA 01608
Tel.: 508-753-8118
Counsel for Mark Winiker

## CERTIFICATE OF SERVICE

I hereby certify that on this day I sent a copy of the within pleading to Nathaniel D. Pitnof, Esq., 100 Grove Street, Worcester, MA 01605, Michael Angelini, Esq., Bowditch & Dewey, 311 Main Street, Worcester, MA 01608 postage prepaid, first class mail.

Date: 16 May 2014

*Russell S. Chernin*

Russell S. Chernin