UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NICHOLAS FIORILLO, AS TRUSTEE OF THE FIORILLO FAMILY REVOCABLE TRUST and 18 PENN AVENUE REALTY TRUST<br><br>Plaintiff,<br><br>v.<br><br>MARK WINIKER, FELICIO LANA D/B/A NORTHEAST PROPERTIES, CANAL MARKETPLACE DEVELOPMENT, LLC, and THE 426 MAIN STREET REALTY, LLC<br><br>Defendants. | CIVIL ACTION<br><br>NO. 14-40080-TSH |

**ORDER AND MEMORANDUM OF DECISION ON DEFENDANT FELICIO LANA'S FIRST AND SECOND MOTIONS TO DISMISS (Docket Nos. 47 & 73)**

**February 12, 2015**

HILLMAN, D.J.

Plaintiff Nicholas Fiorillo ("Plaintiff" or "Fiorillo"), as trustee of the Fiorillo Family Revocable Trust and the 18 Penn Avenue Realty Trust ("Fiorillo Trusts"), asserts that defendants conspired to embezzle, extort, convert, and launder money, property, and monthly property rents belonging to the Fiorillo Trusts. On September 2, 2014, Defendant Felicio Lana filed a motion to dismiss for failure to state a claim (Docket No. 47) ("First Motion to Dismiss"). In opposition to that motion, Plaintiff's counsel Nathaniel Pitnof moved for leave to file a second amended complaint (Docket No. 48). Mr. Pitnof withdrew his appearance in this action on November 24, 2014. On December 15, 2014 the Court held a hearing on the First Motion to Dismiss and Mr.

1

Israel Sanchez appeared as counsel for Plaintiff. Without ruling on Defendant Lana's First Motion to Dismiss, the Court granted Plaintiff's motion for leave to amend (Docket No. 64). Plaintiff—now represented by Mr. Sanchez—filed the Second Amended Complaint on January 14, 2015 (Docket No. 68). In response, Defendant Lana filed a second motion to dismiss for failure to state a claim (Docket No. 73) ("Second Motion to Dismiss"). Because the Second Amended Complaint is now the operative complaint, the First Motion to Dismiss (Docket No. 47) is **_denied as moot_**. For the reasons that follow, Defendant Lana's Second Motion to Dismiss (Docket No. 73) is **_granted in part_** and **_denied in part_**.

## Background

Plaintiff's Second Amended Complaint alleges an elaborate scheme by which multiple individuals conspired to deprive Plaintiff of his investments and contractual rights in various real estate properties beginning in 2011. Nine of the complaint's thirteen counts are brought against Defendant Lana: tortious interference with contractual or advantageous business relations (Count I); violation of RICO Act (Count II), RICO conspiracy (Count III), common law fraud (Count V), intentional interference with contracts (Count VII), violations of M.G.L. c. 93A (Count IX), conversion (Count X), defamation (Count XII) and civil conspiracy (Count XIII). The allegations relevant to Lana, accepted as true for purposes of this motion to dismiss, are briefly recounted here.

In January 2011, Plaintiff entered into a partnership agreement with Kevin Curtis involving investments in real estate and property management for various properties located in and around Worcester, Massachusetts. The agreement provided that Plaintiff would find and negotiate the purchase of new real estate and development projects, and that Curtis would manage the properties by performing duties such as collecting rents, hiring and firing employees

and subcontractors, paying operating expenses, and maintaining and renovating the properties. Presumably unbeknownst to Plaintiff, Curtis was a member of an enterprise that existed "for the purpose of extorting money and property from the plaintiffs through various real estate scams." Pl.'s Second Am. Compl. ¶ 11. The enterprise in turn hired or contracted with Defendant Lana, doing business as Northeast Properties, to collect rents at a property belonging to the Fiorillo-Curtis partnership located at 426 Main Street in Worcester. *Id.* at ¶ 39.

The complaint is replete with generalized allegations of wrongdoing, asserting that that the enterprise, including Defendant Lana, conspired to embezzle, extort, and launder monies from Plaintiff.[1] However, the complaint does provide some factual support for the counts against Lana. First, the complaint alleges that in his capacity as manager of the 426 Main Street property, and in conjunction with Curtis and the other defendants, Lana misappropriated rents and equipment belonging to the Fiorillo-Curtis partnership. Paragraphs 58, 61, 66, and 67 are representative of those allegations:

> 58. Despite Fiorillo's efforts, Curtis and the defendants failed to uphold there [sic] respective obligations, including maintaining the property; and Winiker and Boudreau allowed Curtis and Lana to misappropriate hundreds of thousands in collected rents for their own benefit.
>
> 61. Lana has converted at least $48,000 dollars in rent from 426 Main Street since his so called management started and has made no attempt to pay the outstanding taxes, bills and debt payments.
>
> 66. To carry out their scheme, Curtis and defendants Boudreau, Winker and Lana hired a third party management company, Northeast Properties, with its principal Felicio Lana as the manager. Lana, in addition to having at one time outstanding debts consisting of $500,000 in back taxes and fines to the City of Worcester owes millions of dollars to national lenders, and he has defaulted on more than $1,800,000 in loans secured by his personal guaranty.

---

[1] For example, paragraph 42 of the Second Amended Complaint states that "[a]t varying times relevant hereto, [defendants] jointly and severally instructed, controlled, hired, sub-contracted with, and/or employed themselves in order to defeat Fiorillo's legal and equitable ownership in all the properties named herein." Pl.'s Second Am. Compl. ¶ 42.

> 67. Lana, who is under financial pressure, has two bankruptcies and has conspired with Curtis and Winiker to desolve [sic] Fiorillo's interest in the property by claiming the property is owned by Lana as he continued to collect rent and not service the debt or the expenses of the property.

Next, the complaint asserts that Lana misrepresented to local banks that he owned the 426 Main Street property in order to refinance the property for his personal benefit:

> 68. Lana has also misrepresented to regional and local lenders, Dennis Coy, Warren Gombergh, and Central One Bank that he was 100% owner of 426 Main Street and has attempted for months to cash-out and refinance upwards of $500,000 for his own benefit without plaintiffs knowledge or consent.

The complaint also alleges that Curtis and Lana threatened to publish to the Worcester business community that Plaintiff was a drug dealer if Plaintiff proceeded with this lawsuit. *See* Pl.'s Second Am. Compl. ¶ 111(c). These three actions constitute the entirety of the factual allegations against Defendant Lana, and he moves to dismiss the complaint for failure to state a claim.

## **Discussion**

### *Standard of Review*

To survive a 12(b)(6) motion to dismiss, a complaint must evince the requisite factual detail to establish a *plausible* claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 68 (1st Cir. 2000). The court may consider "only facts and documents that are part of or incorporated into the complaint." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

Dismissal is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft

4

to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

For claims alleging fraud, Rule 9(b) imposes a heightened pleading standard, requiring a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This standard means that a complaint must specify the time, place, and content of an alleged false representation." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotations omitted); *see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (observing that claims for fraud typically must "specify the who, what, where, and when of the allegedly false or fraudulent representation").

<u>*Count I: Tortious Interference with Contractual and Business Relations*</u>

Count I of Plaintiff's complaint asserts that Lana and other defendants intentionally interfered with Plaintiff's contractual and advantageous business relations.[2] The claim essentially blends two distinct torts—interference with contracts and interference with business relations—into one, but the analysis for purposes of this motion to dismiss is the same. Under

---

[2] Count VII is also styled as "Intentional Interference with Contracts," and is brought against all defendants. As the Court reads the complaint, Count VII is entirely duplicative of Count I with respect to Lana. Therefore, the Court grants dismissal of Count VII as it pertains to Lana. Count VII remains, however, with respect to the other defendants. Similarly, Count I references a violation of M.G.L. c. 93A, even though Count IX also asserts a 93A claim against Lana. The Court interprets Count I only as a tortious interference claim, and reserves analysis of 93A for Count IX.

5

Massachusetts law, a claim for intentional interference with contractual relations requires a plaintiff to show that: "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Harrison v. NetCentric Corp.*, 433 Mass. 465, 476, 744 N.E.2d 622 (2001).[3]

The complaint alleges that Plaintiff entered into a partnership agreement with a third party, Kevin Curtis, *see* Pl.'s Second Am. Compl. ¶ 13, and that Defendant Lana was "intimately aware" of the arrangement between Plaintiff and Curtis. *Id.* at ¶ 26. It further states that Lana—in conjunction with Curtis and others—misappropriated thousands of dollars worth of the partnership's rents and equipment, *id.* at ¶¶ 61, 70, and represented to lenders that he was the sole owner of 426 Main Street to refinance the property for his own benefit. *Id.* at ¶ 68. These allegations are sufficient to make plausible Lana's liability for interfering with the Fiorillo-Curtis partnership. Thus, the complaint states a claim for tortious interference with contractual or business relations, and the Second Motion to Dismiss is denied as to Count I.

*Counts II & III: RICO Violation and RICO Conspiracy*

Count II asserts that the Defendants violated the RICO Act, 18 U.S.C. § 1961. To succeed in a civil RICO action, a plaintiff must establish the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Dermesropian v. Dental Experts, LLC*, 718 F. Supp. 2d 143, 153 (D. Mass. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985)). For purposes of the RICO statute, "an enterprise may

---

[3] To plead intentional interference with an advantageous business relationship, plaintiff must allege: "(1) the plaintiff was involved in a business relationship or anticipated involvement in one; (2) the defendant knew about the relationship; (3) the defendant intentionally and purposefully interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Gouin v. Gouin*, 249 F. Supp. 2d 62, 75 (D. Mass. 2003). The difference between the two torts is merely the existence of a contract. *Id.*

be a legal entity . . . or it may be an informal grouping of individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580–581, 101 S.Ct. 2524 (1981). An enterprise can be shown by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583, 101 S.Ct. 2524.

To fulfill the third and fourth requirements, a RICO plaintiff is required "to show two or more 'acts of racketeering activity;' that is, acts that violate certain specified federal [or state] statutes." *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 451 (D. Mass. 2013) (citing 18 U.S.C. § 1961(1), (5)). These acts include (1) offenses chargeable under State law and punishable by imprisonment of more than one year that involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance, and (2) violations of certain federal statutes, such as the mail and wire fraud statutes, listed at 18 U.S.C. § 1961(1). Where a plaintiff relies on predicate acts containing fraud, the complaint must meet Rule 9(b)'s heightened pleading requirement by alleging the fraud with particularity. *See New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987). "[T]o comprise a pattern, the two or more predicate acts must be 'related' [and] the acts must constitute or implicate a continuing threat of criminal behavior." *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir. 2002) (internal citation omitted).

Count III asserts a claim for RICO conspiracy. To make this showing, Plaintiff must allege "the same elements of a RICO claim, plus allegations that each RICO co-conspirator 'knowingly joined the conspiracy and involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses.'" *Dickey v. Kennedy*, 583 F. Supp. 2d 183, 188 (D. Mass. 2008) (quoting *Mani v. United Bank*, 498 F.Supp.2d 406, 411 (D. Mass. 2007)).

7

Defendant Lana argues that the complaint is deficient because it does not demonstrate an "enterprise," it fails to allege two or more acts of racketeering activity, and it fails to establish that any racketeering activities are part of a pattern. Although the complaint's RICO allegations are opaque and disorganized, the Court finds that Count II does—albeit barely—state a claim for a RICO violation. Paragraphs 10-12 allege that Lana was a member of an informal, association-in-fact enterprise that included Defendant Winiker, Curtis, and others. *See* Pl.'s Second Am. Compl. ¶ 10-12. The complaint describes the purpose of the enterprise ("extorting money and property from the plaintiffs through various real estate scams"), and describes the methods by which the enterprise operated. *Id*. These allegations are sufficient to establish an enterprise for purposes of a RICO claim.

With respect to racketeering activity, Lana argues that the only acts he is alleged to have committed are extortion and conversion, and that neither constitute racketeering activity under the statute. The Court disagrees. Paragraphs 111(b)-(c) describe how Lana threatened Plaintiff in order to convince him to drop this lawsuit, and 111(b) specifically states that this conduct violates federal and state extortion laws (18 U.S.C. § 1951 and M.G.L. c. 265 § 25). *See* Pl.'s Second Am. Compl. ¶ 111. Even assuming that Defendant is correct that 18 U.S.C. § 1951 (the federal extortion statute) requires a defendant to actually *obtain* the victim's property, the state "attempted extortion" statute is not so narrow. It provides:

> Whoever, verbally or by a written or printed communication, maliciously threatens to accuse another of a crime or offence . . . with intent thereby to extort money or any pecuniary advantage, or with intent to compel any person to do any act against his will, shall be punished by imprisonment in the state prison for not more than fifteen years . . . .

M.G.L. c. 265 § 25. The complaint alleges that Lana threatened to publish to the Worcester business community that Fiorillo was a drug dealer if he proceeded with this lawsuit. *See* Pl.'s Second Am. Compl. ¶ 111(c). This conduct appears to fit the plain language of M.G.L. c. 265 §

8

25. Thus, Defendant Lana's threat qualifies as a predicate act under RICO, because it is an "act or threat . . . involving extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

Turning to a second predicate act, Paragraphs 111(d)-(g) allege that defendants committed bank and insurance fraud in 2011 and 2012 in violation of 18 U.S.C. § 1344. The federal bank fraud statute makes criminally liable:

> "[w]hoever knowingly executes, or attempts to execute, a scheme . . . to obtain any of the moneys, funds, credits, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."

18 U.S.C. § 1344. Although paragraphs 111(d)-(g) are convoluted, the Court considers the allegations in light of paragraph 68, which states that Lana:

> misrepresented to regional and local lenders, Dennis Coy, Warren Gombergh, and Central One Bank that he was 100% owner of 426 Main Street and has attempted for months to cash-out and refinance upwards of $500,000 for his own benefit without plaintiffs knowledge or consent.

Pl's Second Am. Compl. ¶ 68. Taken together with Paragraph 111, the Court finds that this language states, with particularity, that Lana committed a second predicate act by violating 18 U.S.C. § 1344. Further, these two predicate acts constitute a pattern. Taking the scheme described in the complaint as true, it is reasonable to infer that Lana's attempted extortion and attempted bank fraud were both intended to protect and/or advance the financial gains of the RICO enterprise. Thus, the predicate acts were "related" and "implicated a continuing threat of criminal behavior." *Sys. Mgmt., Inc.*, 303 F.3d at 105.

Finally, the complaint makes the additional showing required for a RICO conspiracy that Lana knowingly joined the conspiracy and participated in the commission of two predicate acts. The complaint repeatedly asserts that Lana was aware of the contractual relationship between

Fiorillo and Curtis, and that he actively participated in the enterprise's scheme to defraud Plaintiff. *See, e.g.*, Pl.'s Second Am. Compl. ¶¶ 26(m), 41. (stating that "Lana had at all relevant times been intimately aware" of the Fiorillo-Curtis partnership, and that the enterprise, including Lana, "diligently worked to . . . usurp partnership assets [and] rents"). As described above, the complaint also alleges that Lana was directly involved in the commission of two predicate acts. Therefore, the complaint alleges the requirements for a RICO conspiracy.

For the foregoing reasons, Plaintiff's complaint states a claim for a RICO violation and RICO conspiracy. The Second Motion to Dismiss is denied as to Counts II and III.

*Count V: Fraud*

Count V alleges a claim for common law fraud against Defendant Lana. In Massachusetts, a claim for fraud requires the plaintiff to show "that (1) the defendant made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act in reliance thereon, (4) the plaintiff relied upon the representation, and (5) the plaintiff acted to his detriment." *Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 81 (D. Mass. 2004) (citing *Reisman v. KPMG Peat Marwick LLP*, 57 Mass. App. Ct. 100, 108-09, 787 N.E.2d 1060 (2003)). The tort is subject to Rule 9(b)'s heightened pleading requirement. *See In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 181-82 (D. Mass. 2003).

Plaintiff fails to state a claim for fraud. Count V recounts general misconduct of Lana regarding his management of the 426 Main Street property, but ignores the basic requirements of the tort: a purposeful misrepresentation made by the defendant, and detrimental reliance by the plaintiff. The complaint alleges only one statement made by Lana to Plaintiff—the threat made by Lana to convince Plaintiff to drop this lawsuit. *See* Pl.'s Second Am. Compl. ¶ 111(c).

10

Plaintiff does not assert that this threat was a false statement, nor that Plaintiff relied upon the statement.[4] Therefore, the Second Motion to Dismiss is granted as to Count V.

*Count IX: Violations of M.G.L. c. 93A*

Count IX asserts a claim for unfair and deceptive business practices in violation of M.G.L. c. 93A. A claim brought under the Massachusetts deceptive practices statute requires a showing that the defendant's conduct "(1) falls within the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers or other businesspersons." *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28, 37 (1st Cir. 2008) (internal quotations and alterations omitted). When combined with a claim for intentional interference with a contract, the 93A analysis is simple. "If [a plaintiff] can prove the elements of a tortious interference with contract, then it may also prevail in proving that these same acts constituted an unfair or deceptive act or practice in trade or commerce in violation of [M.G.L. c. 93A]." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 91-92 (D. Mass. 2010). Because Plaintiff's complaint states a claim for intentional interference with contracts, the 93A claim also survives. The Second Motion to Dismiss is therefore denied with respect to Count IX.

*Count X: Conversion*

Count X of Plaintiff's complaint alleges that Lana converted funds rightfully belonging to the Fiorillo-Curtis partnership. To succeed on a claim for the tort of conversion, a plaintiff must show "an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession." *Kelley v. LaForce*, 288 F.3d 1, 11-12 (1st Cir. 2002) (citing *Third Nat'l Bank v. Continental Ins. Co.*, 388 Mass. 240, 446 N.E.2d 380 (1983); Restatement (Second) of Torts § 222A (1965)). *See also Gouin v. Gouin*, 249 F. Supp.

---

[4] Indeed, Plaintiff did not rely on the threat, as this lawsuit remains pending.

2d 62, 76 (D. Mass. 2003) (same). A conversion claim requires "proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it . . . ." *Kelley*, 288 F.3d at 12 (citing *Grande v. PFL Life Ins. Co.*, No. 9663, 2000 WL 1476676, at *4 (Mass. App. Div. Sept. 27, 2000)).

The complaint sufficiently pleads the requirements for conversion. Plaintiff alleges that Lana was hired by Curtis to manage and collect rents for the 426 Main Street property, and that he misappropriated thousands of dollars worth of rents and equipment while failing to service the property and pay outstanding taxes, bills, or other debts. *See* Pl.'s Second Am. Compl. ¶ 58, 60, 61, 66, 67, 70. Although Lana may have had a right to possess the rents for purposes of his management duties, the complaint states that he used the rents for his "own benefit." *Id.* at ¶ 58. This is sufficient for the Court to infer that Lana made a positive and wrongful act intended to appropriate the property for himself.[5] *See Kelley*, 288 F.3d at 12. Therefore, taking the allegations as true and drawing all reasonable inferences in Plaintiff's favor, the complaint states a claim for conversion. The Second Motion to Dismiss is denied as to Count X.

*Count XII: Defamation*

Count XII asserts a claim for defamation against Lana. Defamation is "(1) a false or defamatory communication, (2) of and concerning the plaintiff, which is (3) published or shown to a third party." *Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997). In Massachusetts, the tort of defamation is subject to a stricter pleading standard than other claims, requiring plaintiffs "to plead the elements of their claims with specificity in order to survive a motion to

---

[5] Lana asserts that the complaint is deficient because it does not allege that Plaintiff demanded the rents and that Lana refused return them. *See Atlantic Fin. Corp. v. Galvam,* 311 Mass. 49, 50-51, 39 N.E.2d 951 (1942) (stating that in cases where "the defendant's possession is not wrongful in its inception," the plaintiff must show demand and refusal). However, as Lana acknowledges, a claim for conversion need not be pled with particularity under Rule 9(b); it is governed by the more permissive standard of Rule 12(b)(6). Given the contentious nature of the business dispute between the parties, it is reasonable to assume that a demand and refusal occurred. Thus, even without the words "demand and refusal," the complaint contains enough heft for the Court to infer Lana's liability at this stage of the litigation.

dismiss" for failure to state a claim. *Eyal v. Helen Broadcasting Corp.,* 411 Mass. 426, 432 n.7, 583 N.E.2d 228 (1991). To survive a motion to dismiss, a plaintiff must allege: "(1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." *Dorn*, 975 F. Supp. at 395-96.

Plaintiff's count for defamation provides woefully little detail, stating only that "Lana has openly and conspicuously published falsehoods that Fiorillo is a known drug dealer and drug smuggler." Pl.'s Second Am. Compl. ¶ 151. Although this arguably provides the precise wording of the defamatory statement ("Fiorillo is a known drug dealer and drug smuggler"), it does not include the means or approximate dates of publication. Therefore, under the heightened pleading standards required by Massachusetts defamation law, the claim must be dismissed. The Second Motion to Dismiss is granted as to Count XII.

### *Count XIII: Civil Conspiracy*

Plaintiff's final claim against Lana is a count for civil conspiracy. Two types of civil conspiracy exist under Massachusetts law. The first "requires proof of coercion; the second requires proof of a common plan to commit a tortious act." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 188, 689 N.E.2d 833 (1998). Under the first type of conspiracy, a plaintiff "must allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir. 1994). For the second type of conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id.* at 1564.

13

The Second Amended Complaint contains no allegations that would satisfy the first type of conspiracy. However, it states a claim for conspiracy under the second theory. Plaintiff alleges that Defendant Lana was hired by Curtis and the other defendants to assist in their scheme to usurp assets from the Fiorillo-Curtis partnership. *See* Pl.'s Second Am. Compl. ¶¶ 39, 41. As part of this plan, Lana tortiously misappropriated rents and equipment, and represented to lenders that he was the sole owner of 426 Main St. *Id.* at ¶¶ 58, 67-68. Consequently, the complaint states a claim for civil conspiracy and the Second Motion to Dismiss is denied as to Count XIII.

## Conclusion

For the foregoing reasons, Defendant Lana's First Motion to Dismiss (Docket No. 47) is ***denied as moot***. Defendant Lana's Second Motion to Dismiss (Docket No. 73) is ***granted in part*** and ***denied in part***.

The Second Motion to Dismiss is ***granted*** on Counts V (fraud), VII (intentional interference with contracts), and XII (defamation), as they pertain to Defendant Lana.

The Second Motion to Dismiss is ***denied*** on Counts I (intentional interference with contractual or business relations), II (RICO violation), III (RICO conspiracy), IX (unfair and deceptive business practices), X (conversion), and XIII (civil conspiracy).

SO ORDERED.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE